Argued and submitted March 6, 2014, affirmed December 2, 2015

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,
*Plaintiff-Appellant,*

*v.*

Kevin D. GOODRICH,
and All Unknown Occupants,
*Defendant-Respondent.*

Jackson County Circuit Court
110016389E; A150421

364 P3d 696

Rochelle L. Stanford argued the cause and filed the briefs for appellant. With her on the briefs was Pite Duncan, LLP. With them on the reply brief was Tracy J. Frazier.

G. Jefferson Campbell, Jr., argued the cause and filed the brief for respondent. With him on the brief was G. Jefferson Campbell, Jr., P.C.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

In this forcible entry and wrongful detainer (FED) action, plaintiff Federal National Mortgage Association appeals a judgment denying its claim to possession of property to which it obtained a deed after a nonjudicial foreclosure. The trial court ruled that the nonjudicial foreclosure was invalid—and plaintiff's claim of possession therefore failed—because Mortgage Electronic Registration Systems, Inc. (MERS), which had acted as a beneficiary of the foreclosed trust deed, is not a proper beneficiary under the Oregon Trust Deed Act (OTDA). While this case was pending on appeal, the Supreme Court decided *Brandrup v. ReconTrust Co.*, 353 Or 668, 303 P3d 301 (2013) and *Niday v. GMAC Mortgage, LLC*, 353 Or 648, 302 P3d 444 (2013), holding that MERS, which was neither a lender nor successor to a lender, was not a proper beneficiary under the OTDA. For the reasons explained below, we reject plaintiff's efforts to distinguish those cases, and we affirm the trial court's judgment.

## I.  BACKGROUND

The facts giving rise to this case are essentially undisputed. However, to the extent that competing inferences can be drawn from the record, we state the facts in the light most favorable to defendant, the prevailing party at trial. *Reeves v. Rodgers*, 204 Or App 281, 283, 129 P3d 721 (2006) (stating the facts in the light most favorable to the prevailing party after an FED trial).

In 2005, defendant took out a loan from First Horizon Home Loan Corporation that was secured by a trust deed for property located at 644 Shadow Way in Central Point, Oregon (the "Shadow Way property").[1] The trust deed identified MERS as the "beneficiary" and "nominee" for the

---

[1] "When a person borrows money to purchase a home, in Oregon as elsewhere, the loan usually is memorialized in a promissory note that contains the borrower's written, unconditional promise to pay certain sums at a specified time or times. Generally, the borrower and lender also enter into a separately-memorialized security agreement—a mortgage or, more commonly in Oregon, a trust deed." *Brandrup*, 353 Or at 675. Plaintiff took the position at trial that there is no legal requirement that it produce the original promissory note in an FED action, and the promissory note is not in the record. Nor is there evidence in the record concerning subsequent assignments of the promissory note itself.

lender, First Horizon (and its successors and assigns), and identified Ticor Title Company of Oregon as the trustee. The trust deed was recorded in Jackson County.

In June 2010, MERS executed and recorded an "Assignment of Trust Deed" for the Shadow Way property. The assignment provides that MERS "as Beneficiary, hereby grants, conveys, assigns and transfers to EverHome Mortgage Company * * * all beneficial interest under" the trust deed. EverHome then executed and recorded a "Substitution of Trustee," which stated that it was the "present Beneficiary under the Trust Deed" and was substituting Kelly D. Sutherland of Shapiro & Sutherland, LLC, as trustee.

At some point, defendant defaulted on the loan secured by the trust deed. Thereafter, Sutherland conducted a foreclosure sale of the Shadow Way property. EverHome was the high bidder at that sale, and Sutherland executed a trustee's deed conveying the property to EverHome after the sale. EverHome then recorded a warranty deed conveying the property to plaintiff.

After obtaining the warranty deed, plaintiff filed this FED action in June 2011, seeking possession of the Shadow Way property, which defendant still occupied. Defendant, who was *pro se*, responded that plaintiff was not entitled to possession because the foreclosure was invalid. During the FED trial, defendant argued that the "chain of title" had been broken by the involvement of MERS, which was not a valid beneficiary of the trust deed. Defendant explained that the missing link in plaintiff's chain of title occurred "between the First Horizon Mortgage and MERS where MERS suddenly appears as a grantor assigning interest to EverHome Mortgage."

The trial court understood defendant to raise a single issue: whether "using MERS is a proper means of transferring title from First Horizon to EverHome Mortgage." The court allowed the parties to file supplemental briefing on that issue and, in December 2011, ruled in defendant's favor. In the judgment, the court provided a thorough account of its reasoning. The court explained that whether MERS "is a legitimate beneficiary under Oregon law and whether

assignments of the deed of trust comply with [*former* ORS 86.735 (2011), *renumbered as* ORS 86.752 (2013)] are questions that have not been addressed by the Oregon Supreme Court or Oregon Court of Appeals," but that Oregon federal district courts had considered the issue. After describing the divergent opinions reached by those district courts, the trial court stated that it was more persuaded by the view that MERS cannot be a valid beneficiary of the trust deed. The court further concluded that, regardless of whether MERS is a valid beneficiary, the process of mortgage assignment and recording through MERS does not comply with *former* ORS 86.735(1) because the process allows the promissory note and the deed of trust to be separated, thereby making it difficult to tell whether the note holder has the right to foreclose. Thus, the court ruled

> "that non-judicial foreclosure is not available in this case because the MERS system confuses the identity of the beneficiary and violates the Trust Deed Act's recording requirement. For the reasons stated above, the defect in the chain of title precludes Plaintiff from bringing this action based upon Plaintiff's assertion that it conducted a valid non-judicial foreclosure and subsequent trustee's sale."

Plaintiff now appeals that judgment.

## II.  DISCUSSION

The issues in this case have evolved on appeal as the result of cases decided since the trial. In its opening brief on appeal, which was filed in June 2012, plaintiff argued that the trial court erred in ruling that MERS is not a valid beneficiary of the trust deed under Oregon law, and that the text and context of the OTDA "unambiguously support the conclusion that MERS is a proper beneficiary under the statute." Shortly thereafter, in July 2012, this court decided *Niday v. GMAC Mortgage, LLC*, 251 Or App 278, 301-02, 284 P3d 1157 (2012), which held—consistently with the trial court's reasoning in this case—that "the 'beneficiary' of a trust deed for purposes of the OTDA is the person named or otherwise designated in the trust deed as the person to whom the secured obligation is owed"—*i.e.*, the note holder, not MERS.

Thereafter, in a reply brief, plaintiff attempted to distinguish our holding in *Niday* on three grounds. First, plaintiff argued that the holding in *Niday* does not extend to the FED context where there has been a *completed* foreclosure sale, because *former* ORS 86.780 (2011), *renumbered as* ORS 86.803 (2013), accords a "presumption of finality and the foreclosure sale is not void or voidable." Second, plaintiff argued that the problem with the foreclosure in *Niday* was the existence of unrecorded assignments of the trust deed through transfer of the note—something that, according to plaintiff, is not present in this case. And, third, plaintiff argued that our decision in *Niday* left open the possibility that MERS could act as the agent of the beneficiary for purposes of assigning the deed of trust, which, plaintiff claimed, is what happened here: "The only assignment at issue in this case was from MERS—acting as First Horizon's agent—to EverHome."

The Supreme Court accepted review of our decision in *Niday* and, just before oral argument in this case, issued decisions in *Niday* and a companion case, *Brandrup*, 353 Or 668. In *Brandrup*, the Supreme Court answered four questions of law that had been certified by the United States District Court for the District of Oregon, all of which arose out of nonjudicial foreclosure proceedings based on trust deeds that named MERS as the beneficiary and that purported to authorize MERS to exercise the rights of the lender. *Id.* at 681. The first certified question posed the same question that was litigated below in this case: "May an entity, such as MERS, that is neither a lender nor a successor to a lender, be a 'beneficiary' as that term is used in the [(OTDA)]?" *Id.* at 673.

The Supreme Court answered that question in the negative:

> "For purposes of [*former*] ORS 86.735(1), the 'beneficiary' is the lender to whom the obligation that the trust deed secures is owed or the lender's successor in interest. Thus, an entity like MERS, which is not a lender, may not be a trust deed's 'beneficiary,' unless it is a lender's successor in interest."

*Id.* at 673-74.

The second certified question, as reframed by the court, concerned the effect of language in a trust deed that authorizes MERS to exercise the lender's rights:

"Is MERS eligible to serve as beneficiary under the Oregon Trust Deed Act where the trust deed provides that MERS 'holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests'?'"

*Id.* at 674 (emphasis omitted). The court answered the second certified question in the negative as well:

"Because the provision that MERS 'holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS *** has the right to exercise any or all of those interests,' does not convey to MERS the beneficial right to repayment, the inclusion of that provision does not alter the trust deed's designation of the lender as the 'beneficiary' or make MERS eligible to serve in that capacity."

*Id.*

The third certified question asked, "Does the transfer of a promissory note from the lender to a successor result in an automatic assignment of the securing trust deed that must be recorded prior to the commencement of nonjudicial foreclosure proceedings under [*former*] ORS 86.735(1)?" *Id.* at 673. The court also answered "no" to that question:

"[*Former*] ORS 86.735(1) does not require recordation of 'assignments' of a trust deed by operation of law that result from the transfer of the secured obligation."

*Id.* at 674. That is, the court held that transfer of a promissory note effects an assignment of the trust deed by operation of law, but that the OTDA requires recordation "only of formal, written assignments." *Id.* at 699 (citations omitted).

The court then reframed the fourth certified question as two subquestions. The first subquestion asked, "'Does the [OTDA] allow MERS to hold and transfer legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a

successor or series of successors?'" *Id.* at 674-75. The court answered:

> "'No.' For purposes of the OTDA, the only pertinent interests in the trust deed are the beneficial interest of the beneficiary and the legal interest of the trustee. MERS holds neither of those interests in these cases, and, therefore, *it cannot hold or transfer legal title to the trust deed.* * * * [I]t is immaterial whether the note secured by the trust deed has previously been 'transferred from the lender to a successor or series of successors.'"

*Id.* at 675 (emphasis added). The second subquestion asked, "'Does MERS nevertheless have authority as an agent for the original lender and its successors in interest to act on their behalves with respect to the transfer of the beneficial interest in the trust deed or the nonjudicial foreclosure process?'" *Id.* The court answered:

> "The power to transfer the beneficial interest in a trust deed or to foreclose it follows the beneficial interest in the trust deed. The beneficiary or its successor in interest holds those rights. MERS's authority, if any, to perform any act in the foreclosure process therefore must derive from the original beneficiary and its successors in interest. We are unable to determine the existence, scope, or extent of any such authority on the record before us."

*Id.*

After announcing those legal principles in *Brandrup*, the Supreme Court applied them to the record in *Niday*, a summary judgment case. As pertinent here, the Supreme Court concluded that a genuine issue of material fact existed as to the validity of the successor trustee's appointment and, as a result, its authority to pursue a nonjudicial foreclosure under the OTDA. *Niday*, 353 Or at 666-67. The Supreme Court explained that the trial court had apparently relied on a document showing that MERS had appointed Executive Trustee Services as successor to the original trustee; but, the Supreme Court held, "appointments of a successor trustee may only be made by the trust deed beneficiary, * * * and, as discussed, MERS is not, and never has been, the beneficiary of the trust deed for purposes of the OTDA." *Niday*, 353 Or at 666 (internal citation omitted).

In addition, the court addressed whether MERS was the beneficiary's agent for purposes of initiating the foreclosure. The court drew heavily on its discussion in *Brandrup*:

> "[A]s this court recognized in *Brandrup*, 353 Or at 705-09, even if MERS lacks authority to act as the trust deed's beneficiary, it may have authority to act on behalf of the beneficiary *if it can demonstrate that it has an agency relationship with the beneficiary and that the agency agreement is sufficiently expansive.* Although in *Brandrup* we discussed that possibility in connection with the issue of MERS' authority to assign a trust deed, it would seem to apply equally to the present issue of MERS's authority to foreclose the trust deed. *In either case, MERS' authority to act as the beneficiary's agent depends on who succeeded to the lender's rights, whether those persons manifested consent that MERS act on their behalf and subject to their control, and whether MERS has agreed to so act. \* \* \*.*
>
> "\* \* \* \* \*
>
> "But as far as we can tell, there is nothing in the summary judgment record in this case that identifies the successors to the original lender's interests or shows that MERS is authorized, as the agent of the successors to the original lender's interests, to initiate or direct a nonjudicial foreclosure proceeding under the OTDA. There is some evidence that the current owner of the note is Aurora Bank and that Aurora Bank is a member of MERS. But there is no evidence as to whether Aurora Bank is a successor to the original lender's interests. Nor is there evidence of an agency agreement between Aurora Bank and MERS, or between MERS and its members as a whole, much less one that authorizes MERS to initiate foreclosures on behalf of Aurora Bank. Further, there is some suggestion that GMACM is the 'holder' of the note. If the note is negotiable, it is possible that GMACM is a successor to the original lender's interests or that both Aurora Bank and GMACM share that role; however, neither the record nor the parties' arguments establish those matters beyond genuine dispute."[2]

---

[2] In a footnote following that paragraph, the court noted:

"The parties have not addressed the identity of the beneficiary if, as we conclude, it is not MERS. That issue is by no means academic. If a note is negotiable, the 'party entitled to enforce the note' (the 'PETE') under ORS 73.0301 may not be the same person as the owner of the note, that is, the

(Original emphasis omitted; emphasis added.) Accordingly, the Supreme Court concluded that the trial court had erred in granting summary judgment in *Niday*.

During oral argument in this case, plaintiff's counsel conceded that *Brandrup* and *Niday* had conclusively resolved the question whether MERS was a proper beneficiary of the trust deed. She argued, instead, that the trial court's ruling should be reversed for reasons similar to those that had been developed in plaintiff's reply brief: (1) that, regardless of whether MERS was a proper beneficiary, defendant could not challenge the validity of the trustee's deed in an FED action; (2) that there were no unrecorded assignments of the trust deed in this case; and (3) that *Niday* and *Brandrup* left open the possibility that MERS could act as the agent of the beneficiary.

None of the arguments advanced by plaintiff provides a basis for reversing the trial court's judgment. Plaintiff's first argument—that defendant cannot challenge the validity of a completed foreclosure sale in an FED action—comes too late. Plaintiff made that point in the trial court, but plaintiff did not raise it in its opening brief as a basis for reversal. We will not consider a ground for reversal that is raised on appeal for the first time in a reply brief. *See Belgarde v. Linn*, 205 Or App 433, 438, 134 P3d 1082, *rev den*, 341 Or 197 (2006) ("We do not consider arguments for reversal of a trial court ruling raised for the first time in a reply brief[.]" (Citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991).); *cf. US Bank, NA v. Eckert*, 267 Or App 721, 722, 341 P3d 173 (2014) (holding that a similar argument—that "a defendant is not permitted to challenge the validity of the underlying trustee's sale in an FED action—or, indeed, in any action following the

party entitled to the economic benefits of the note. Because a mortgage or trust deed follows the note that it secures, *United States Nat. Bank v. Holton*, 99 Or 419, 428-29, 195 P 823 (1921), the potential separation of ownership and PETE status raises the question of whether a lender's successor—that is, the beneficiary—must be the owner, the PETE, or both? Most courts that have thus far addressed the issue have concluded that PETE status, not ownership, confers the right to foreclose. *See, e.g., Edelstein v. N.Y. Mellon*, 286 P3d 249, 257 (Nev 2012). Because the parties have not addressed the issue, we do not discuss it further here."

*Niday*, 353 Or at 665 n 8.

trustee's sale"—could not be raised for the first time in a petition for reconsideration).

Plaintiff's second argument, which addresses the lack of "unrecorded assignments" in this record, fails to meaningfully distinguish the holdings in *Brandrup* and *Niday*. The question in this case is not whether there are unrecorded assignments of the trust deed but, rather, whether there was a *valid* assignment of the trust deed to EverHome. Plaintiff's claimed right to possession of the premises is based on the warranty deed from EverHome. That warranty deed, in turn, is based on the trustee's deed that EverHome obtained through a foreclosure sale that was conducted by Sutherland pursuant to a substitution of trustee. That substitution was executed by EverHome as the beneficiary of the trust deed. Thus, as litigated below, plaintiff's claim of possession depends on a valid assignment of the trust deed to EverHome.

The only evidence of any assignment of the trust deed to EverHome—recorded or unrecorded—was an assignment *by MERS*, which had no beneficial interest in the trust deed and could not validly transfer legal title to the trust deed. *See Brandrup*, 353 Or at 704-05 ("[T]he OTDA does not allow MERS to hold or transfer legal title to a trust deed separately from the right to receive repayment of the obligation that it secures. Because MERS does not have the right to receive repayment of the notes in these cases, the OTDA does not allow MERS to hold and transfer legal title to the trust deeds that secure them."). And, the only evidence of any substitution of Sutherland as trustee was an appointment by EverHome as beneficiary. *See id.* at 688 ("[S]ignificantly, it is the beneficiary alone who has authority to appoint a successor trustee. ORS 86.790(3)."). Thus, regardless of whether defendant can point to unrecorded assignments to challenge the underlying foreclosure, the question remains whether the recorded assignment from MERS transferred a beneficial interest in the trust deed to EverHome.

That leads us to plaintiff's third argument: that MERS validly assigned the trust deed to EverHome, not as beneficiary, but rather as the *agent of* the beneficiary, First Horizon. One of the problems with that argument is

that there is no evidence in the record to support an agency theory. As the court explained in *Niday*, it is possible for MERS to act as an agent where it can be "demonstrate[d] that [MERS] has an agency relationship with the beneficiary and that the agency agreement is sufficiently expansive. * * * MERS' authority to act as the beneficiary's agent depends on who succeeded to the lender's rights, whether those persons manifested consent that MERS act on their behalf and subject to their control, and whether MERS has agreed to so act." 353 Or at 664. In *Brandrup*, the court held that the "trust deeds, by themselves, do not establish the necessary relationship; they instead confuse the issue by first granting MERS the seemingly-narrow status of a 'nominee' and then purporting to grant MERS authority to 'exercise' other 'interests' if 'necessary.'" 353 Or at 709. The court further observed that, "[m]ore importantly, although the trust deeds are signed by the borrowers, the original lenders and their successors, who are the other parties under defendants' theory of 'common agency,' are not signatories." *Id.*

Here, plaintiff makes the bare assertion that MERS was acting as the agent for the original beneficiary, First Horizon, but plaintiff does not cite any *evidence* of that. As was the case in *Brandrup*, the record does not include the agreement between MERS and its members, or any separate agreement that would manifest First Horizon's consent that MERS act as its agent, or that MERS agreed to act as First Horizon's agent. Nor is the trust deed itself, which is unsigned by First Horizon or MERS, sufficient to demonstrate the existence of the necessary agency relationship. *See Brandrup*, 353 Or at 709. Thus, even assuming that plaintiff can raise an agency theory at this late stage in the case, it is not a basis on which to reverse the trial court's judgment on this record.

Affirmed.