SHORR, J.
*494 Defendant appeals from a judgment of conviction for one count of third-degree robbery and two counts of second-degree theft. Defendant was charged along with a codefendant, Sang Nguyen (Sang), for allegedly stealing merchandise from Abercrombie & Fitch (AF) and Abercrombie Kids (AK) stores at the Washington Square mall in Tigard. Defendant and Sang were stopped by the police shortly after driving away from the mall following an altercation with a loss-prevention officer. At trial, the court allowed the state to introduce evidence that defendant had merchandise and a receipt from another retailer in the trunk of his car. It also admitted testimony from a police detective who explained that defendant may have been engaging in "return fraud," returning stolen items for store credit.
Defendant assigns error to those evidentiary rulings.[1] The state does not defend the trial court's rulings on appeal but argues that any error was harmless. We conclude that the trial court erred by admitting the challenged evidence. Further, that error was not harmless. Accordingly, we reverse and remand.
We provide the following facts as context for our analysis of the trial court's evidentiary rulings. Defendant was charged after leaving Washington Square mall with a friend, Sang. A loss-prevention officer, Tadesse, had observed Sang stealing a brown coat from the AF store in the mall. Tadesse testified that she saw Sang enter the AF store alone. She observed Sang remove a brown coat from a rack in the store, cross to other side of the store, and surreptitiously rip the security tag off the coat. During that time, Tadesse also observed defendant enter the AF store carrying a bag from Express, another clothing store in the mall. Defendant and *413 Sang did not speak to or otherwise acknowledge one another. The two men then left the store at the same time, heading in opposite directions. Sang was carrying the coat from which he had removed the security tag. *495 Tadesse immediately approached Sang outside the store and attempted to retrieve the coat from him. Sang resisted her efforts and insisted that the coat was his. During their struggle, defendant approached and began to argue with Tadesse. Tadesse testified that defendant asked "are you harassing my friend?" and told her "we didn't take any of your stuff, bitch." Tadesse recalled that defendant was yelling and behaving aggressively. Defendant then left, and Tadesse and Sang struggled for a few moments more. When it was clear that Sang would not release the coat, Tadesse became concerned for her safety, released the coat, and allowed Sang to leave.
Tadesse followed Sang to the parking lot outside the mall. She observed Sang and defendant meet up at a car and saw defendant place the Express bag in the trunk. Tadesse approached but maintained her distance. Sang and defendant continued to be verbally aggressive toward Tadesse. Tadesse attempted to write down the license plate number of the car, at which point defendant approached her-Tadesse recalled at trial that he "charged" up to her-and told her that he would kill her if she wrote down the license plate number. Defendant then made a slashing motion with his thumb across his throat. Tadesse backed away and the men left in the car.
Tadesse was able to record a partial license plate number and called the police. Defendant and Sang were stopped in defendant's car a short time later by Orth and Rinell, Tigard police officers. Detective Hahn arrived at the scene shortly thereafter. Orth and Rinell first recovered from the backseat of the car a brown coat matching the description of the coat that was stolen from AF. Hahn then received permission from defendant to search the car. In the trunk, Hahn discovered two jackets from AK-one blue and red and one blue-in a bag. Neither Hahn nor Orth could recall if those jackets were in an Express bag like the one Tadesse observed defendant carrying or in a different bag. The officers did not find a receipt for those jackets in the car. In addition, Hahn and Orth observed several other jackets from other retailers, including Express, in the trunk, including multiple jackets of the same size and color. The officers also found an exchange receipt for items from Express.
*496 Tadesse arrived at the scene during the police search and identified defendant, Sang, and the stolen merchandise. Tadesse confirmed that they were the same men from the mall and identified the brown coat as the same one that Sang had stolen from AF. In addition, Tadesse believed that the two AK coats from the trunk, as well as a similar AK coat worn by Sang, had all been stolen as well. Tadesse based that belief on the fact that three coats of the same size and color had recently gone missing from the inventory of the AK store at the Washington Square mall. Defendant later claimed that the AK coats from the trunk belonged to him and denied that they were stolen, but he could not provide a receipt or other proof of purchase.
Defendant and Sang were both arrested and charged in connection with the stolen merchandise. Defendant was charged with two counts of theft-one for each of the AK jackets in the trunk-and one count of robbery for threatening to kill Tadesse while working with Sang to steal the brown AF coat. Defendant was not charged in connection with the Express merchandise found in the trunk. A jury found defendant guilty on all three counts.
At trial, the state called Tadesse, Orth, and Hahn as witnesses. Defendant did not call any witnesses. Tadesse recounted her version of the events above, including her memory of defendant aggressively defending Sang and threatening to kill Tadesse in the parking lot if she attempted to write down defendant's license plate number. Tadesse also testified that defendant's possession of the potentially stolen AK jackets was typical of people involved in "return fraud." Tadesse explained that return fraud entails refunding stolen merchandise for store credit, which the thieves then sell online or use for themselves. Defendant did not object to that testimony.
*414 Orth testified about his observations after he stopped defendant and Sang. Defendant objected when Orth began to testify on redirect that there was clothing from other retailers in defendant's trunk. The court ruled that defense counsel had opened the door to that line of questioning when, on cross-examination, counsel asked Orth if there were multiple bags in the trunk. Following that ruling, *497 Orth testified that there was Express merchandise and an exchange receipt from Express in the trunk.
Following Orth's testimony, defendant renewed the objection outside the presence of the jury, contending that the evidence was irrelevant, speculative, and unfairly prejudicial. The trial court again ruled that defendant had opened the door to that testimony and concluded that evidence of the Express merchandise and exchange receipt from Express was "prejudicial" but "not unfairly so." Without prompting from the state, the court also determined that the evidence was "probative and thus admissible" to show an "absence of mistake" under OEC 404(3), which provides that evidence of prior bad acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Finally, Hahn's testimony covered similar ground to Orth's. Like Orth, Hahn recalled seeing the AK jackets in the trunk, but he could not recall what kind of bag the jackets were in. Hahn also testified that he observed several other jackets in the trunk, including several of the same brand, size, and color. Based on his training and experience, Hahn believed that the other merchandise in the trunk was indicative of return fraud. Hahn explained return fraud as follows:
"[F]olks will boost or just steal something. They go try to do a no receipt return, get gift cards. Then those things can be cashed at Western Union type places. ***
"So there's a variety of things that can be sold on eBay, they can be boxed up, shipped overseas. I've experienced and investigated all of these, so that's in my mind when I'm seeing return receipts and those kind of things[.]"
On appeal, defendant argues that it was error for the trial court to admit evidence of defendant's possession of Express merchandise and an exchange receipt from Express when defendant did not face any charges related to that merchandise. Defendant relatedly argues that it was error to allow Hahn to testify about return fraud.
As previously noted, the state does not defend the trial court's evidentiary rulings on appeal and instead argues *498 that any error was harmless. We understand the state's decision not to defend the court's evidentiary ruling and conclude, without substantial discussion, that the court erred in admitting evidence of the Express merchandise and receipt found in defendant's car. First, defendant did not open the door to testimony regarding the Express merchandise and receipt. Defendant's cross-examination of Orth only elicited testimony that defendant had multiple bags in his trunk. Orth's testimony was not specific enough to open the door to the wrongly admitted evidence. Second, the evidence of the mere presence of the Express merchandise and receipt in defendant's car was not admissible under OEC 404(3) to show lack of mistake. Even assuming that the facts here presented the type of situation in which evidence of lack of mistake could be admissible on any of the charges, see State v. Tena , 362 Or. 514, 524-25, 412 P.3d 175 (2018) (theory of relevance based on lack of mistake under the doctrine of chances "does not apply when there is a dispute about whether the defendant performed the [charged] act"), the evidence that Express merchandise and a receipt were present in the car was not sufficiently similar to evidence of the charged conduct relating to the AF and AK theft and robbery.[2] See State v. Davis , 279 Or. App. 223, 234, 381 P.3d 888 (2016) ("Even where the prior act and the charged conduct involve similar kinds of bad conduct *** the similarities between the physical elements must outweigh the differences."). Accordingly, the trial *415 court erred when it admitted the evidence.[3]
Although the trial court erred, we do not presume that an evidentiary error was prejudicial. OEC 103(1). Rather, defendant has the burden to demonstrate that the error affected a substantial right. See State v. Hobbs , 218 Or. App. 298, 309, 179 P.3d 682, rev. den. , 345 Or. 175, 190 P.3d 1237 (2008). If there is little likelihood that the error affected the verdict, we will not reverse on the basis of that error. Id. (citing State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) ). In making that *499 determination, "we assess any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue." State v. Wirkkala , 290 Or. App. 263, 271, 414 P.3d 421 (2018) (citing Davis , 336 Or. at 33-34, 77 P.3d 1111 ). We also consider "the importance of the erroneously admitted evidence to a party's theory of the case." Id.
The state first argues that the trial court's error was harmless because the prosecution presented a "strong case" at trial and there was additional "compelling evidence" of defendant's guilt. Relative to that other evidence, the state argues that the improperly admitted evidence was of only "minor significance." In particular, the state points out that there was evidence to show that defendant and Sang were working in concert to steal merchandise, most notably the fact that defendant interceded on Sang's behalf when Tadesse confronted Sang in the mall and later threatened to kill Tadesse after she followed the men to their car.
In support of that argument, the state cites State v. Ennis , 212 Or. App. 240, 261-62, 158 P.3d 510, rev. den. , 343 Or. 223, 168 P.3d 1154 (2007). In Ennis , we addressed an alleged violation of a defendant's federal Confrontation Clause rights and, as such, applied the federal standard for harmless error. Here, by contrast, defendant argues that the evidence at issue was inadmissible under the Oregon Evidence Code and that he was unfairly prejudiced by its admission. Accordingly, Oregon law guides our harmless-error analysis.
Under Oregon law, we address whether there is little likelihood that the wrongly admitted evidence, in light of the other evidence in the record, affected the jury's verdict. Davis , 336 Or. at 32, 77 P.3d 1111. The state argues that the improperly admitted evidence was of "minor significance" relative to "the compelling evidence of defendant's threatening conduct at the mall," which the state contends demonstrates that defendant and Sang were jointly involved in a robbery and retail theft. We are not convinced that, as the state argues, the "sole plausible explanation" for defendant's aggressive and threatening behavior toward Tadesse when she approached the men at the mall was his desire to assist Sang in stealing merchandise. While a factfinder may have readily accepted that theory, there are other at least plausible *500 explanations, including that defendant wished to defend his friend from what he genuinely believed were baseless accusations and was overzealous in his efforts. Thus, we cannot necessarily conclude that the evidence of defendant's threatening behavior is overwhelming evidence that defendant was participating in Sang's theft of the jacket and that the wrongly admitted evidence is trivial by comparison.
The state next argues that the trial court's error was harmless because the challenged evidence was "partially cumulative" of evidence in the record to which defendant did not object. Specifically, Tadesse referenced return fraud in her testimony when the prosecution asked why defendant might have had the stolen AK merchandise with him at the mall.
While we acknowledge that Tadesse addressed return fraud in her testimony, she did so briefly and only in the context of the allegedly stolen AK jackets. Hahn, by contrast, explained the concept in somewhat greater detail and did so with reference to the Express merchandise in the trunk. Indeed, as described above, Hahn testified that *416 the Express merchandise-including multiples of the same items of the same size and color-and exchange receipt were indicative of return fraud. Hahn's testimony allowed the jury to infer that defendant was involved in a more extensive return-fraud enterprise, which was qualitatively unique evidence that defendant had committed the crimes charged. Seen in that context, Hahn's testimony was not cumulative of other evidence in the record.
The wrongly admitted evidence also was noncumulative in another critical respect. Unlike Orth and Hahn, Tadesse did not refer to the Express merchandise or receipt found in defendant's trunk. The references to that other merchandise implicated defendant in a broader return-fraud scheme that went beyond the three allegedly stolen jackets for which defendant was charged. That evidence uniquely supported the idea that defendant and Sang were working together to steal merchandise to engage in return fraud, which undermined defendant's theory that he was unaware that Sang was stealing the AF jacket when Tadesse confronted the men at the mall. Indeed, the evidence led directly *501 to an inference that defendant was engaged in an extensive return-fraud scheme involving multiple thefts from numerous retailers and that the charged conduct was only one part of that larger enterprise. We cannot conclude that that inference-unsupported by other evidence in the record-played no role in the jury's deliberations and was not a contributing factor to the verdict.
Finally, the challenged evidence was important to the state's case because it bolstered the otherwise circumstantial evidence of defendant's guilt. The fact that the police found two AK jackets that matched the general description of jackets that were missing from the AK store's inventory in defendant's car certainly supports an inference that defendant stole the jackets, but the state was unable to present any direct evidence of defendant's involvement in that crime. Likewise, the fact that defendant aggressively intervened when Tadesse confronted Sang at the mall supports an inference that defendant was working with Sang to steal merchandise, but, as noted, there are plausible noncriminal explanations for defendant's conduct as well. In light of the absence of direct evidence of defendant's guilt, additional circumstantial evidence implicating defendant and Sang in a wider criminal enterprise involving retail theft and fraudulent returns strengthened the state's case against defendant.
Ultimately, we cannot conclude that there was little likelihood that the erroneously admitted evidence affected the verdict. Therefore, the trial court's error in admitting the evidence was not harmless.
Reversed and remanded.

Defendant also assigns error to the trial court's denial of his motion for judgment of acquittal on the second count of second-degree theft. We reject that assignment of error without further discussion.

Neither party addressed the admissibility of the evidence under OEC 404(4) at trial. We do not address that issue in the first instance on appeal.

As noted above, before the trial court, the state advanced no argument under OEC 404(3). Consequently, we do not consider whether the disputed evidence could be admitted to show anything other than "absence of mistake."