Argued and submitted January 9, 2018, affirmed January 27, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DARIUS LESHAWN THOMPSON,
aka Darius Lawshawn Thompson,
*Defendant-Appellant.*

Multnomah County Circuit Court
14CR29087; A160396

481 P3d 921

Defendant appeals a judgment of conviction for first-degree robbery, ORS 164.415, unlawful use of a weapon, ORS 166.220, and identity theft, ORS 165.800. In his first assignment of error, defendant challenges the denial of his motion to suppress his cell phone and derivative evidence therefrom, contending that the phone was unreasonably seized in violation of Article I, section 9, of the Oregon Constitution. In his second assignment of error, defendant argues that the trial court erred by denying his demurrer to the first-degree robbery count, because the trial court's amendment to the indictment after jeopardy attached violated defendant's right to grand jury presentment under Article VII, section 5, of the Oregon Constitution. *Held*: Regarding the denial of defendant's motion to suppress, any error was harmless. As for the denial of defendant's demurrer, defendant cannot benefit from an alleged error that he was instrumental in bringing about.

Affirmed.

David F. Rees, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____
\* Egan, C. J., *vice* Hadlock, J. pro tempore.

AOYAGI, J.

Affirmed.

Egan, C. J., concurring in part, dissenting in part.

**AOYAGI, J.**

Defendant appeals a judgment of conviction for first-degree robbery, ORS 164.415, unlawful use of a weapon, ORS 166.220, and identity theft, ORS 165.800. He argues that the trial court erred, first, by denying his motion to suppress evidence and, second, by denying his demurrer to the first-degree robbery count. We reject the first assignment of error because any error was harmless, and we reject the second assignment of error because defendant cannot benefit from an alleged error that he was instrumental in bringing about.[1] Accordingly, we affirm.

## FACTS

The historic facts are largely undisputed. Any facts that were disputed in the trial court proceedings are noted.

One afternoon, the victim was driving around town with B, when the victim decided to sell his in-dash DVD player for extra money. B told the victim that defendant would likely be interested in buying it. They drove to defendant's sister's apartment, where defendant was staying. B went inside and returned with defendant and a woman.

What happened next was disputed at trial. According to the state's witnesses, defendant agreed to buy the DVD player and asked the victim to unhook it, then defendant stepped aside to talk to B. Defendant soon returned, pulled a knife, and held the knife to the victim's throat, while B and the woman frisked the victim and stole items from his car. At that point, the victim, who had a gun in his pocket, fired several shots, hitting defendant once in the leg. According to defendant, that is not what happened. In his version of events, defendant declined to buy the DVD player, at which point B, who was desperate for money to buy drugs, pulled

---

[1] In supplemental assignments of error, defendant challenges the trial court's instruction to the jury that only 10 jurors needed to agree on a guilty verdict and the subsequent acceptance of the jury's verdicts. We reject the supplemental assignments of error, because the jury returned a unanimous verdict on the robbery count, and it was not polled on the other counts. *See State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020) (regarding unanimous guilty verdicts returned after erroneous unanimity instruction); *State v. Dilallo*, 367 Or 340, 342, 478 P3d 509 (2020) (regarding guilty verdicts returned after erroneous unanimity instruction, where the jury was not polled).

out a knife and attempted to rob the victim. Not wanting to be part of the robbery, defendant turned and was leaving when the victim fired a bullet that was intended for B but hit defendant instead.

Events after the shooting were not disputed. The victim drove away, and defendant returned to his sister's apartment. Later that night, defendant sought medical treatment at a hospital. Because defendant had a gunshot wound, the hospital contacted the police. When Officer Robertson arrived, he immediately recognized defendant from prior encounters, which caused him to realize that defendant had not given his real name to the hospital. Instead, defendant had used someone else's identification to check in. Robertson asked defendant about the shooting, but defendant was evasive. Robertson seized defendant's cell phone at the hospital. He believed that it would contain evidence related to the shooting, as well as evidence of defendant's real identity as relevant to the crime of identity theft (*i.e.*, using someone else's identification at the hospital), and he was concerned that defendant would otherwise destroy the phone or its data.

The police investigated the shooting fairly extensively. Robertson testified that, during the five days after the shooting, he and at least one other officer gathered information, drove to Salem multiple times, talked to witnesses, canvassed the area for surveillance video, called the apartment management, obtained information from the Oregon State Police and from the victim, and arranged towing of the victim's car for a forensic examination. Robertson described the investigation as relatively complex with a lot of moving parts and a lot of information to verify. On the fifth day after the shooting, Robertson obtained a search warrant for defendant's phone.

Six days after the shooting, defendant was arrested and interviewed at some length by Robertson. The details of that interview are mostly irrelevant on appeal. What is relevant is that, at one point during the interview, Robertson mentioned defendant's cell phone, noting that it showed five calls from B, including one on the night of the shooting right around the time that defendant was going to the hospital,

which was inconsistent with defendant's prior claim that he had never talked to B on the phone before. After noting that inconsistency, Robertson continued with the interview.

Defendant was indicted on numerous charges. Before trial, he moved to suppress the cell phone and all derivative evidence. The state responded that the seizure was justified by exigent circumstances, arguing that Robertson had probable cause to believe that the cell phone contained evidence of both identity theft and a shooting-related crime. Defendant rejoined that Robertson lacked probable cause for any crime. In the alternative, defendant argued that, even if the initial seizure was lawful, it was unreasonable to hold the cell phone for five days before obtaining a warrant.

The trial court denied defendant's motion to suppress. The court concluded that exigent circumstances existed and that Robertson had probable cause at least as to the crime of identity theft. (As to whether Robertson had probable cause that defendant's cell phone would contain evidence of a shooting-related crime, the trial court described that as a "closer call" and never clearly decided the issue.) The court rejected defendant's argument about the five-day delay in obtaining a warrant, because it found that the police were working on "an active, ongoing investigation" during that time.

Later in the same hearing, after defendant argued the 32nd of 50 motions *in limine*, defendant noted for the record that, if the trial court had granted his motion to suppress, some statements from his police interview would not have come in. That was the first time that defendant had identified police interview statements as derivative of the cell phone evidence. The court noted defendant's position for the record.

The case proceeded to a jury trial. On the afternoon of the first day of trial, defendant demurred to Count 2 of the indictment, first-degree robbery, based on the wording of the charge. The trial court denied the demurrer. The trial continued. The jury found defendant guilty of first-degree robbery, unlawful use of a weapon, identity theft, and two other counts that merged with the foregoing counts. Defendant appeals the resulting judgment of conviction.

## MOTION TO SUPPRESS

In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress his cell phone and all derivative evidence. He argues that Robertson's seizure of the phone was an unreasonable warrantless seizure under Article I, section 9. Alternatively, he argues that, even if the initial seizure was justified, the police could not hold the phone for five days without a warrant. Finally, he argues that, "[b]ecause police used information from the cell phone in their interrogation of defendant, they exploited the unlawful seizure."

We review the denial of a motion to suppress for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *Id*.

Article I, section 9, guarantees citizens "the right *** to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A warrantless seizure is *per se* unreasonable unless it falls within an established exception to the warrant requirement. *State v. Lambert*, 263 Or App 683, 691-92, 328 P3d 824, *modified on other grounds on recons*, 265 Or App 742, 338 P3d 160 (2014). It is the state's burden to prove that a warrant exception applies. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011). One exception to the warrant requirement is exigent circumstances, which includes circumstances that require "police to act swiftly *** to forestall *** the destruction of evidence." *State v. Snow*, 337 Or 219, 223, 94 P3d 872 (2004). To prove that exception applies, the state must make an individualized showing of exigent circumstances *and* show that probable cause existed to believe that the item seized was evidence of a crime. *State v. Parras*, 110 Or App 200, 203, 822 P2d 151 (1991).

The state argues that, even if the trial court erred in denying defendant's motion to suppress, it was harmless. We address that issue first, because it is dispositive.

"Harmless error" is a "shorthand reference to a legal standard" under Article VII (Amended), section 3, of

the Oregon Constitution. *State v. Davis*, 336 Or 19, 27-28, 77 P3d 1111 (2003). That standard reduces to "a single inquiry: Is there little likelihood that the particular error affected the verdict?" *Id*. at 32. If so, we must affirm, notwithstanding the error. *Id*. Our focus "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Id*. Significantly, it is the defendant's burden to show that the erroneous admission of evidence prejudiced his substantial rights, *i.e.*, was not harmless. *State v. Nguyen*, 293 Or App 492, 498, 429 P3d 410 (2018) ("Defendant has the burden to demonstrate that the error affected a substantial right."); *State v. Torres*, 206 Or App 436, 445, 136 P3d 1132 (2006) ("The burden is on a defendant who appeals his conviction to show that a court's error affected a substantial right.").

Here, the cell phone itself was not admitted into evidence at trial, and, on appeal, defendant does not contend that any data from the cell phone was admitted into evidence and was helpful to the prosecution or damaging to his defense. To the contrary, defendant's harmlessness argument turns entirely on the admission of certain statements from his police interview. Defendant argues that the denial of his motion to suppress was not harmless because it resulted in the jury hearing certain incriminating statements from his police interview that should have been suppressed. The state responds that the admission of those statements was harmless given the other evidence.

We agree with the state that, even if the trial court erred in denying suppression of certain statements made by defendant during his police interview, any error was harmless. Because the harmlessness issue is dispositive, we assume without deciding both (1) that defendant's motion to suppress encompassed statements made in his police interview, a preservation issue that we need not resolve given our disposition, and (2) that the trial court erred in denying suppression.

The harmlessness analysis begins with "determin[ing] the particular evidentiary issue that is subject to harmless error analysis." *State v. Maiden*, 222 Or App 9, 13,

191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). Here, we look to defendant's opening brief to determine which evidence he is claiming was derivative of the cell phone evidence, was wrongly not suppressed, and may have influenced the verdict.[2] *See Federal National Mortgage Association v. Goodrich*, 275 Or App 77, 86, 364 P3d 696 (2015) ("We will not consider a ground for reversal that is raised on appeal for the first time in a reply brief."); *see also* ORAP 5.45(1) (limiting our consideration to errors "assigned as error in the opening brief").

Defendant first contends that the trial court erred in not suppressing a statement that he made during his police interview—after the point in the interview at which Robertson referred to his cell phone—in which defendant admitted to being present at the robbery and being there to protect B. But any error in not suppressing that particular statement had little likelihood of affecting the verdict. Earlier in the interview, *before* Robertson mentioned defendant's phone, defendant had already changed his story from claiming that he was shot randomly while walking down the street to the version of events that he later put forward at trial. He also had already told Robertson that "[B] just wanted me there for like protection or something." The statement at issue therefore was duplicative of other, unchallenged evidence. *State v. McAnulty*, 356 Or 432, 460-61, 338 P3d 653 (2014), *cert den*, 136 S Ct 34 (2015) (the erroneous admission of duplicative evidence is typically harmless). Moreover, it had little importance to the state's case, given defendant's own version of events, as well as the physical evidence. *See Nguyen*, 293 Or App at 498-99 (identifying "the importance of the erroneously admitted evidence to a party's theory of the case" as being relevant to the harmlessness analysis). The physical evidence included the knife used in the crime (with the victim's blood on it), the victim's identification, and the victim's social security card, all of which were found at

_____

[2] We note that, typically, the defendant will identify in the trial court the specific evidence that he is seeking to suppress, which in turn will be the evidence addressed in the opening brief on appeal. The posture of this case is more complicated, for reasons that go to a potential preservation issue that we do not discuss because, even assuming without deciding that defendant adequately preserved his claim of error as to the specific evidence that he now claims was derivative, we reject his arguments on other grounds.

defendant's sister's apartment, where defendant had been staying.

Defendant next argues that the "[s]earch of the cell phone revealed that defendant knew the middle-man, [B,] contrary to defendant's statements to police." But, again, before Robertson ever mentioned the phone, defendant had already admitted to being present at the robbery to protect B, from which it is reasonable to infer that they knew each other. Before Robertson mentioned the phone, defendant also was able to identify B and the victim from photographs shown to him by the police, despite having previously denied knowing B and having just told Robertson that he would not be able to identify B in a photograph. The victim also testified that B introduced him to defendant. *See McAnulty*, 356 Or at 460-61 (regarding duplicative evidence). Given the other evidence, particularly defendant's own statements, any error in not suppressing an additional statement that defendant knew B was harmless.[3]

Finally, in his reply brief, defendant identifies three additional interview statements that he claims should have been suppressed and may have influenced the verdict. ORAP 5.45(4)(a)(iii) expressly provides that, "[i]f an assignment of error challenges an evidentiary ruling, the assignment of error must quote or summarize the evidence that appellant believes was erroneously admitted or excluded." Also, "[w]e will not consider a ground for reversal that is raised on appeal for the first time in a reply brief." *Goodrich*, 275 Or App at 86. We therefore reject defendant's argument as to those statements, which cannot fairly be characterized as "merely *** a factual clarification" to the argument in his opening brief. 308 Or App at 743 (Egan, C. J., concurring in part and dissenting in part). In any event, even assuming that those statements were encompassed in defendant's motion to suppress and even if they had been raised in the opening brief, the admission of those statements was harmless as well.

---

[3] In addition to the specific statements identified in his opening brief, defendant makes a general assertion that the state "failed to prove that information from defendant's cell phone did not affect the flow of the interview, the questions the police asked, and the manner that they asked them." To the extent that statement is meant to raise additional suppression issues on appeal, it is too undeveloped for us to address it.

Defendant's arguments to the contrary—adopted by the dissent, 308 Or App at 744-45 (Egan, C. J., concurring in part and dissenting in part)—depend on statements taken out of context and unreasonable inferences.[4]

Accordingly, any error in denying suppression of the police interview statements identified by defendant was harmless.

## DEMURRER

In his second assignment of error, defendant argues that the trial court erred in denying his demurrer to Count 2, robbery in the first degree, ORS 164.415.

In the original indictment returned by the grand jury, defendant was charged with committing robbery in the first degree while "armed with a deadly weapon." *See* ORS 164.415(1)(a) ("A person commits the crime of robbery in the first degree if the person [commits robbery in the third degree] and the person * * * [i]s armed with a deadly weapon[.]"). After realizing that a knife does not meet the definition of a "deadly weapon," the state obtained a new grand jury indictment, which charged defendant with having "used or attempted to use a dangerous weapon" to commit robbery in the first degree. *See* ORS 164.415(1)(b) ("A person commits the crime of robbery in the first degree if the person [commits robbery in the third degree] and the person * * * [u]ses or attempts to use a dangerous weapon[.]").

After the new indictment was obtained, defendant expressed a concern that, if he was convicted, it would be an "incredible headache" to work with the Department of Corrections to ensure that he received credit for time served, because the second indictment was under a different case number. To accommodate defendant, the state offered to proceed under the first indictment, if defendant waived his right to grand jury presentment and let the trial court amend the language of Count 2. Defendant agreed.

---

[4] As it would not otherwise be apparent, due to the use of ellipses, we note that the block quote in the dissenting opinion is taken from five pages of the trial transcript, which in turn derives from eight single-spaced pages of the interview transcript. *See* 308 Or App at 742 (Egan, C. J., concurring in part and dissenting in part).

On the morning of trial, before the jury was sworn, the state asked the trial court to amend Count 2 of the indictment to refer to a "dangerous weapon" instead of a "deadly weapon." Defense counsel represented that "we don't object to that amendment via interlineation this morning before jeopardy attaches."

Later the same day, after the jury was sworn (and thus jeopardy attached) but outside the jury's presence, defendant demurred to Count 2. Defense counsel explained that he had been "waiting" for jeopardy to attach so that he could raise an issue. He expressed some "ambivalence" about raising it but said that he felt obligated. Defense counsel then said that defendant was "filing a demurrer to Count 2." He acknowledged that "there was an agreement that, prior to jeopardy attaching, the State would be allowed to amend [the original indictment] as appropriate." But he asserted that the parties had not agreed on "specific" language beforehand, and he pointed out that the prosecutor had not requested the complete amendment necessary to state the charge correctly. That is, the prosecutor had asked the court to change "deadly weapon" to "dangerous weapon," but he had not asked the court to change "armed with" to "used or attempted to use." Defense counsel described that omission as "fortunate" for defendant, because the indictment as amended did not conform to the statutory language.

The state protested that defendant's position was contrary to the parties' agreement. It described the incomplete amendment as being in the nature of a scrivener's error. The state emphasized that the second indictment had contained the correct language and that proceeding on the original indictment with an amendment was solely for defendant's benefit. The trial court agreed with the state and denied the demurrer. It then amended the indictment to replace "armed with" with "used or attempted to use."

On appeal, defendant argues that the trial court violated his right to grand jury presentment under Article VII, section 5, of the Oregon Constitution, because amending "armed with" to "used or attempted to use" was a matter of substance. *See* Or Const, Art VII (Amended), § 5(6) ("The district attorney may file an amended indictment

or information whenever, by ruling of the court, an indict-ment or information is held to be defective in form."); *State v. Pachmayr*, 344 Or 482, 489, 185 P3d 1103 (2008) (an indictment may be amended at trial to correct matters of form but not substance). The state maintains that the amendment was a matter of form. *See Pachmayr*, 344 Or at 490-95 (holding that trial court's amendment of an indict-ment to change "deadly weapon" to "dangerous weapon" in an assault charge—a change requested by the state to correct a "scrivener's error"—was one of form that did not change the essential nature of the charge, prejudice the defendant's right to notice of the charges against him to pro-tect against double jeopardy, or deprive the defendant of a defense);[5] *State v. Long*, 320 Or 361, 369, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995) (holding that trial court did not err in amending an indictment to fix a typographical error in the date of the alleged offense).

We need not decide whether the amendment here was one of substance or form, because, in any event, defen-dant's claim of error is not a basis for reversal given his own role in bringing about the error. *See State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (we will not reverse based on an error that the party seek-ing reversal was "actively instrumental in bringing about"). Whether the parties had expressly discussed the specific language of the amendment before trial, it is undisputed that the amendment's purpose was to conform the (defec-tive) language of the original indictment to the (correct) lan-guage of the second indictment, so that the state would have a valid indictment but defendant could avoid the "incredible headache" of two case numbers. Under the circumstances, defendant could not stand silent while the court amended the indictment, "wait" for jeopardy to attach, and then chal-lenge the indictment based on the amendment. His state-ment that he did not object to the amendment—an amend-ment made at his request and for his benefit—reasonably

---

[5] The Oregon Supreme Court recently reaffirmed *Pachmayr*. *See State v. Haji*, 366 Or 384, 408, 462 P3d 1240 (2020) ("*Pachmayr* is fully consistent with our conclusions about what it means for an indictment to be defective in form and when the test in [*State v. Wimber*, 315 Or 103, 843 P2d 424 (1992)], should be used to analyze whether the district attorney could amend an indictment.").

led the court and the state to understand that he would not object to the indictment as amended.

"The [invited error] rule applies when a party has invited the trial court to rule in a certain way under circumstances suggesting that the party will be bound by the ruling or at least will not later seek a reversal on the basis of that ruling." *State v. Saunders*, 294 Or App 102, 106, 429 P3d 1049 (2018), *rev den*, 364 Or 294 (2019); *see also State v. Dallavis*, 294 Or App 567, 575, 432 P3d 282 (2018), *rev den*, 364 Or 535 (2019) (by representing that he had no objections to being tried on a defective indictment, the defendant invited the error in proceeding to trial). Its application is particularly appropriate when "intentional or strategic" gamesmanship is involved. *State v. Ferguson*, 201 Or App 261, 270, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) (the invited error doctrine prevents parties from making "intentional or strategic" decisions to allow error into the record and then later seek reversal based on that error). Here, defendant is not in a position to seek reversal of the court's amendment ruling, given his own role in bringing about the situation. We reject defendant's second assignment of error.

Affirmed.

**EGAN, C.J.,** concurring in part, dissenting in part.

At the outset, the majority holds that any violation of defendant's right to be free from unlawful search and seizure under Article I, section 9, of the Oregon Constitution, was harmless. In doing so, the majority limits its considerations of defendant's opening brief in such a way as to ignore the import of his argument. Consequently, the majority does not consider whether defendant's right was violated.[1] I disagree. I would, considering defendant's argument in full, conclude that any error from the trial court was not harmless and that defendant's right to be free from unlawful

---

[1] I do not address defendant's contention that probable cause and exigent circumstances did not justify immediate seizure of defendant's cell phone in my dissent. Instead, assuming that the initial seizure was lawful, I would conclude that the state failed to carry its burden of showing that exigent circumstances justified Robertson's seizure of defendant's cell phone for five days.

search and seizure was violated. I concur in the majority's resolution of defendant's second assignment of error and supplemental assignments of error.

Before turning to the analysis, I first note the evidence from defendant's police interrogation that defendant seeks to have excluded:

"OFFICER ROBERTSON: *** This is your phone log from your phone, okay? So we would download a phone and analyze those. There are five calls, one, two, three, four, five. This is [B]'s number, okay? This call happens at 11:05 p.m. the night of the shooting, okay? You told me that you've never talked to him on the phone or anything like that before, so I wonder why he has your phone number in the first place. But then also the time frame, this happens right after the shooting, so he was even calling you when you were at the hospital. Because you got to the hospital about, what, like 11:30, I think?

"* * * * *

"OFFICER ROBERTSON: Okay. So you're saying you didn't want to kill him?

"[DEFENDANT]: I don't know.

"* * * * *

"OFFICER ROBERTSON: But before you told me that [B] had a knife and he held it to [the victim]'s neck, and now you're saying that you don't know what he had.

"[DEFENDANT]: No, I said that (inaudible) I didn't know if he had it on him or not.

"* * * * *

"[DEFENDANT]: I don't want to—I don't want this dude to get in trouble for shooting me (inaudible).

"OFFICER ROBERTSON: Why would you not want him to get in trouble for shooting you?

"[DEFENDANT]: Because he didn't know any better, bro. He was just shooting at somebody[.]"[2]

_____

[2] The majority notes that it would also conclude that defendant did not preserve this evidence at the trial court for our review because defendant did not specify "specific evidence that he is seeking to suppress." 308 Or App at 736 n 2. I disagree. I do not believe that preservation requirements are, or should be, so narrow that a defendant is required to point to "specific" evidence. *See State v.*

Defendant relies on those specific statements to argue that defendant suffered a violation of his right to be free from unlawful search and seizure pursuant to Article I, section 9.

I first address whether any error was harmless.[3] To do so, however, I must address the contention that I have with the majority in ignoring defendant's statements that were wrongfully admitted. The majority in its holding only considers two statements—"defendant admitted to being present at the robbery and being there to protect B" and that the "[s]earch of the cell phone revealed that defendant knew the middle man, [B,] contrary to defendants statements to police." 308 Or App at 737. The majority is wrong to not consider the statements in defendant's reply brief because he neither assigns new error, nor does he assert a new ground for reversal. *See id.* (stating such). Rather, I conclude that defendant merely makes a factual clarification to an argument that he asserted in his opening brief in compliance with ORAP 5.45.[4]

We have rejected new legal arguments that have been first raised in a reply brief. *See, e.g.*, *Dept. of Human Services v. C. M. H.*, 301 Or App 487, 497 n 6, 455 P3d 576 (2019), *rev allowed*, 366 Or 825 (2020); *Federal National Mortgage Association v. Goodrich*, 275 Or App 77, 86-87, 364 P3d 696 (2015) (rejecting new legal argument in light of, what was then, a new Supreme Court case); *Hayes Oyster*

---

*Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004) ("problems * * * may arise if the preservation onion is sliced to thinly"). Rather, I would look to the policies of preservation, which require "fairness, notice to the opposing party, and efficient judicial administration," *Drake v. Alonso*, 285 Or App 620, 625, 396 P3d 961 (2017), and the realities of trial in concluding that defendant preserved this evidence. *See State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) ("Particularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments.").

[3] I address whether any error is harmless first to address my contention with the majority's conclusion before moving on to the merits of defendant's claim.

[4] I agree with the majority that a party may not make a new assignment of error in a reply brief pursuant to ORAP 5.45(1). However, when the issue is, as it is here, whether a specific factual clarification is reviewable by us, I would look to ORAP 5.70, which confines a reply brief to "matters raised in the respondent's answering brief." Additionally, because this assignment challenges the exclusion of evidence, I would also require defendant to "quote or summarize" the evidence he sought to have excluded. ORAP 5.45(4)(a)(iii). The majority raises neither concern, and I would conclude that defendant met both requirements.

*Co. v. Dulcich*, 170 Or App 219, 237 n 20, 12 P3d 507 (2000). However, here, defendant makes no new legal argument but merely *clarifies* the factual statements that defendant argues were derivative of the seizure of defendant's cell phone. Defendant summarized his factual argument to the trial court in his opening brief, asserting that "the statements about what was on the phone would not have been available to the state to use when interrogating defendant, and the interview would have flowed differently." After that, defendant makes his legal arguments, as relevant here, that (1) the state unlawfully seized the phone "for five days while they gathered additional evidence," and (2) that the police "exploited the unlawful seizure of defendant's cell phone." In defendant's reply brief, he merely clarified with specificity what "statements [were] on the phone." Defendant adds no new assignments or legal grounds in his reply after that factual clarification, but defendant reasserts the same grounds in reply to the state's argument. Thus, I would conclude that there are no new assignments or grounds for us to assess in defendant's reply and look to defendant's argument in its entirety.[5]

Looking to the specific evidence that defendant seeks to have excluded, I would find that the error was not harmless. An error is considered harmless if, after viewing the record as a whole, we conclude that there is "little likelihood that the error affected the jury's verdict." *State v. Warren*, 291 Or App 496, 512, 422 P3d 282, *rev den*, 363 Or 744 (2018) (internal quotation marks omitted). We have previously explained that "a variety of considerations may properly inform" that inquiry. *State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008). One such consideration is whether the erroneously admitted evidence goes to the issue at the heart of the case as opposed to a tangential matter. *State v. Willis*, 348 Or 566, 571, 236 P3d 714 (2010). Defendant specified three statements that were derivative of the seizure of his cell phone, all of which go directly to the issue at the heart of the case—whether defendant was the person who

---

[5] Although the majority does not do a full analysis of defendant's specific statements listed in his reply brief, I do note that the majority does conclude that defendant's specific statements would not affect its harmless error analysis. As I discuss below, I disagree.

robbed the victim. Defendant's first statement that he did not know whether he wanted to kill the victim supports an inference that defendant, not B, was the one who attacked the victim. Similarly, defendant's second statement that "[he] didn't know if [B] had [the knife] on him or not" contradicts his prior statements that B was the one who had the knife, supporting an inference that defendant was lying. Finally, defendant's third statement that he "[did not] want [the victim] to get in trouble for shooting me *** [b]ecause he didn't know any better" supports an inference that the victim was acting in self-defense when he shot defendant and, therefore, that defendant was the attacker. Not only do the statements go to the heart of this case, but, as they are admissions from defendant, they are particularly persuasive to a jury. *See State v. Holcomb*, 213 Or App 168, 185, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (recognizing that "a criminal defendant's own statements regarding the crime are especially persuasive and potentially more likely to affect the jury's verdict than other sources of the same information"). Looking at the record as a whole, I am unpersuaded that any error in admitting defendant's incriminating statements was harmless.

Finally, I would find that exigent circumstances did not justify Robertson's retention of defendant's cell phone for five days without a warrant. The Supreme Court has previously explained that "exigency should be assessed in light of the reasonableness *** in time, scope, and intensity." *State v. Mazzola*, 356 Or 804, 819-20, 345 P3d 424 (2015). Specifically, on the issue of time, as applicable in this case, the Supreme Court's decision in *State v. Quinn*, is instructive. 290 Or 383, 623 P2d 630 (1981), *overruled on other grounds by State v. Hall*, 339 Or 7, 115 P3d 908 (2005). In *Quinn*, the court held that the exigent circumstances that justified the warrantless search had dissipated and that, as a result, the search violated Article I, section 9. 290 Or at 392. The issue before us—delay between a seizure due to exigent circumstances and the subsequent search pursuant to a warrant—is different from the delay between the seizure and the warrantless search addressed in *Quinn*. Nonetheless, as the primary inquiry in assessing the validity of any seizure under Article I, section 9, is whether it is reasonable—so

it is here. *See State v. Ritz*, 361 Or 781, 789, 399 P3d 421 (2017) ("The touchstone of [Article I, section 9's] protection is reasonableness."). Accordingly, I would conclude that the operative question set forth in *Quinn*—whether the search was conducted as promptly as was reasonable under the circumstances—is the same question that guides the analysis in this case. Therefore, *Quinn* requires the state to show that the police obtained a search warrant "as promptly after the seizure as is reasonable in the circumstances." 290 Or at 392. Here, the state has failed to make that showing.

Robertson's testimony during the suppression hearing belies any contention that the police obtained a warrant as promptly as was reasonable under the circumstances. When asked directly during the suppression hearing how quickly the police could have obtained a warrant, Robertson answered candidly that he could have obtained a warrant in six to 10 hours:

> "[DEFENSE COUNSEL]: Okay. How long would it have taken to get a telephonic warrant to seize the phone?
>
> "[ROBERTSON]: We would have been able to fill out— essentially that evening.
>
> "[DEFENSE COUNSEL]: How long would you say?
>
> "[ROBERTSON]: To draft a search warrant, have it reviewed and then signed off by a judge anywhere from six to ten hours."

Later, Robertson explained his reasons for not immediately applying for a search warrant:

> "[ROBERTSON]: I don't know if I could offer this, as far as a warrant on a felon at that point in time, yes we were investigating him getting shot, we also had the I.D. theft on top of that. Since the hospital explained to us his injuries were not life threatening, the exigency of obtaining that warrant to go through the phone, I didn't believe that there was one at the time. I thought there were more circumstances that we needed to confirm based on [defendant's] lack of cooperation in answering questions, I knew that there was more than likely more to the story to sort it out. So, I didn't feel there was exigency to apply for the search warrant like right then and there."

        Robertson's testimony indicates that, despite being capable of applying for a search warrant in six to 10 hours, he chose to delay getting a warrant because he wanted to investigate the shooting—not because other pressing tasks prevented him from obtaining one. Accordingly, I would conclude that the state has failed to carry its burden of showing that a warrant could not reasonably have been obtained sooner and that, as a result, even if exigent circumstances did justify the initial seizure of defendant's cell phone, that exigency evaporated during the five-day delay in obtaining the warrant.[6]

        Thus, I would conclude that the trial court erred in denying defendant's motion to suppress evidence obtained from the cell phone and I must, therefore, respectfully dissent from the majority opinion as to the first assignment of error and concur as to the remaining assignments of error.

---

    [6] Although I would conclude here that the five-day delay was unreasonable based on Robertson's testimony that he could have obtained a telephonic warrant in six to ten hours, I do not suggest that officers are required to always seek a telephonic warrant when it is faster than traditional methods. *Quinn* does not require a search to occur as quickly after a seizure as is absolutely possible; it requires the search to occur as promptly as is *reasonably* possible. I would base this decision here based on the time Robertson testified that it would have taken him to obtain a telephonic warrant only because he did not offer testimony about how long it would have taken him to obtain a warrant by traditional methods.