Argued and submitted May 29, 2015, affirmed July 20, petition for review denied October 6, 2016 (360 Or 423)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL LEE GRUBB,
*Defendant-Appellant.*

Douglas County Circuit Court
11CR0573MI; A154880

379 P3d 715

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael S. Shin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

**DEVORE, J.**

Defendant challenges a judgment of conviction for driving under the influence of intoxicants (DUII). On appeal, the issues concern evidence that, on the evening he was arrested, he had assaulted his ostensible girlfriend in violation of a restraining order.[1] Over his objection, the trial court permitted inquiry about the restraining order, admitted a copy of the order, permitted testimony about her injury, and admitted photographs of the injury. Defendant assigns error to the admission of that evidence. Citing OEC 401 and OEC 403, he argues that the evidence was not relevant and that, if relevant, its probative value was outweighed by an unfairly prejudicial effect.[2] We affirm, concluding that defendant introduced evidence that made the challenged evidence relevant, and to the extent that it was asked to do so, the court did not abuse its discretion in balancing under OEC 403.

Generally speaking, we state the facts in the light most favorable to the state, given the conviction. *State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005). We review the relevancy ruling for legal error, and we review the balancing ruling for abuse of discretion. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

Defendant was charged with DUII, ORS 813.010(4), fourth-degree assault constituting domestic violence, ORS 163.160, and harassment, ORS 166.065. Before trial, the state dismissed all of the counts except the DUII count. That count remained for trial, and the only element of the offense at issue was whether defendant drove while under the influence of alcohol.[3]

---

[1] Defense counsel and defendant's daughter referred to the alleged victim of the assault as defendant's girlfriend. The alleged victim did not testify at trial. The restraining order against contact was the only other indication of a relationship. For ease of reference, we refer to the alleged victim as P throughout this opinion.

[2] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Evidence that is not relevant is not admissible. OEC 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" OEC 403.

[3] ORS 813.010 provides, in part:

"(1) A person commits the offense of [DUII] if the person drives a vehicle while the person:

Prior to trial, defendant urged that, because the state had dismissed the assault and harassment charges, the court should enter an "order to make sure none of that '[evidence] contaminates this DUII trial." The state responded that it did not intend to offer any of the evidence relating to the dismissed charges, except to the extent that the responding officers had gotten involved by responding to a domestic assault call. Defendant argued that, under OEC 403, any probative value was substantially outweighed by the danger of unfair prejudice. The trial court ruled that, for the time being, "the state can say that [the officers] are responding * * * to a criminal complaint against [defendant] * * * and they were directed to where he was[.]" Defendant allowed that the court's ruling about the police response to a complaint "would satisfactorily cover * * * [defendant's] admission that he was at the residence."

The state forewarned that it would seek to admit defendant's statements that he drove to P's location, because they related to his driving and the timing of events. Defendant reiterated that he just did not want the "meat and potatoes" of the dismissed charges to "muddy the waters" at the DUII trial. In what would later become significant, the trial court declined to make any further pretrial limitation and advised that the parties raise such issues later "as the evidence is introduced or questions are asked" during the trial.[4]

As the trial unfolded, the primary dispute in the case became when defendant drank in relation to when defendant drove. The relationship between defendant and P became a related issue. In order to explain how this is so, we recount the trial in the way in which it unfolded.

In its case-in-chief, the state did not initially offer any of the disputed evidence relating to the restraining order

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath * * *; [or]

"(b) Is under the influence of intoxicating liquor[.]"

[4] The court cautioned that "if it is the defendant that muddies [the waters] that's the way it is[.]"

or injuries to P that night. Deputy House testified that, on February 18, 2011, at 1:05 a.m., police dispatch received a call prompting him to report to a Linnell Avenue address (hereafter "Linnell address"). When the deputy arrived around 1:10 a.m., he spoke with P, defendant's ostensible girlfriend. Defendant was not on the premises.

On cross-examination, defense counsel asked House questions that alluded to another occasion on which P had falsely accused defendant of driving under the influence. On redirect, House testified about what P told him on the night of the incident. Without objection, House testified that P told him that on *this* occasion "she thought he was drunk" and "impaired" when he left her. House added that P told him that defendant had left "just prior" to her 9-1-1 call. P believed that he was staying at a Super 8 motel. She gave the deputy a description of defendant's white van.

House testified that he recognized the van's description as one he had seen making a "dangerous maneuver" earlier that night, between 11:55 p.m. and 12:18 a.m., while House was involved in a traffic stop of another vehicle. House had seen the van make a U-turn immediately in front of an oncoming semi-truck and another vehicle. The U-turn had occurred two blocks from the Linnell address.

At about 1:30 a.m., House saw defendant's van at the motel. Another officer, Deputy Garcia, found defendant in the lobby of the motel. House interviewed defendant. House recalled that, when at the motel, defendant had said that he had been to the Linnell address twice that night and the last time was the time that he had contact with P and another man, Engel. House noticed that defendant had watery, bloodshot eyes and a strong odor of alcohol on his breath. House remembered that defendant said that he "had a couple of beers," that his last drink had been around 10:00 p.m., that he had not had anything to drink after returning to the motel, and that he had been at the motel for about one hour. Garcia also recalled defendant saying he had not been drinking at the motel. House administered several field sobriety tests, which defendant failed. Defendant was arrested and brought to the county jail to complete

an Intoxilyzer test.[5] The test showed that defendant had a 0.12 percent blood-alcohol content at 3:02 a.m.

At the close of the state's evidence, defendant moved for a judgment of acquittal arguing, among other things, that the state hadn't "presented any evidence that [defendant] was driving at one a.m. when they say that he was driving." The trial court denied the motion.

In his case-in-chief, defendant disputed the state's timeline through his own testimony and through the testimony of his step-daughter, Bare. Bare testified that she met defendant at the motel at 12:15 a.m. She said that he had a six-pack of 16-ounce cans of beer but that he was not intoxicated when she saw him. She left the motel around 1:00 a.m.

On cross-examination, Bare was asked what she had discussed with defendant. Bare replied, "His fight with [P], job, what he was doing, his fight with [P] like always." Bare testified that defendant was upset because P was "cheating" on him. Bare spoke of defendant's interaction with P's daughter earlier in the evening. Bare explained that defendant had driven to provide money to P's daughter, that P was present, and that defendant and P had had a fight. Bare said that she knew that defendant and P "were fighting" because that was the subject defendant had discussed with her at the motel.

When defendant testified, he denied that he had told the deputies that he drove to see P *twice* that night and that he had not said that he stopped drinking at 10:00 p.m. He offered a different sequence of events.

Defendant testified that he had drunk two margaritas about 8:00 p.m., during dinner with P, that he had checked into the motel with her, and that she had left the motel around 10:00 p.m. with his debit card to buy another meal. Instead of buying food and returning, he complained, she had used his debit card for multiple withdrawals. Alerted by "texts," he canceled the card. He testified that he did not

---

[5] At the time of the arrest, defendant had remarked that he would "crush the DUII," because, he said, he could not be found guilty when the officers had not seen him driving.

consume any alcohol at 10:00 p.m. Rather, he had "waited for [P] for a while" at the motel. Around midnight, defendant said, he had driven to Engel's house (*i.e.*, the Linnell address) in order to bring money to his daughter. At that point, defendant said that he saw that P was with Engel. Defense counsel asked, "[W]hat did you do after that, after you found out that she was there?" Defendant responded, "I left. I had words with Mr. Engel. I was pretty upset so I left."

Defendant said he bought a six-pack of 16-ounce Budweisers before returning to the motel so that he could "drink some beers and pass out." He said that, because he was very upset at P, he had started drinking at the motel sometime after midnight. He said that he was angry at P because she had used his debit card without authorization, and she had cheated on him. By the time Bare left the motel, defendant said, he had consumed four cans of beer. Defendant believed that he had been at the motel over an hour when the deputies arrived. He was "buzzed" and "starting to feel it." He remembered the deputy telling him that P had told the deputy that defendant had been at her location twice that night, but he denied it.

During his direct examination, defendant also talked generally about his relationship with P. He testified that he had been in a relationship with her "[o]n and off for almost seven years." When asked by his attorney if there "had been any other time that [he] had some negative consequences because of [his] interactions with [P]," defendant told of another evening when he was pulled over by police on suspicion of drunk driving because P had "gotten mad because of money" and called in a false report about him.

On cross-examination, the state asked whether defendant knew that he was not supposed to have had contact with P. Defense counsel objected that that testimony "goes to the suppressed." The trial court overruled the objection.[6] Defendant answered that he had not known that there was a restraining order in place, because he thought that she had dropped it, and he had never received papers. In response,

---

[6] At this point in the trial proceedings, defendant did not make a further objection that asserted prejudicial effect under OEC 403. That further objection would be urged in response to the next evidence offered.

the state offered evidence of the restraining order and proof of service to impeach defendant's testimony. Defendant objected, arguing that such evidence likewise violated the court's pretrial ruling. The trial court disagreed, recalling,

> "I think my ruling was, and correct me if I'm wrong. I think I said we wouldn't be dealing with it in opening statement or in voir dire. We'd step through it during trial and deal with individual exhibits or evidentiary issues as they came along. I think that's what I said.
>
> "* * * * *
>
> "So I'm not—when you say that I had a pretrial ruling, I never excluded anything. I said we'd step through it as evidence came along."

Even so, defendant contended that the evidence should not now be admitted under OEC 401 because the evidence did not pertain to the DUII charge at issue and because the evidence was "unduly prejudicial" under OEC 403. The court overruled the objection, explaining that the "witnesses have made this [evidence] relevant by their testimony."

The state asked whether defendant knew that P had accused him of hitting her. Defendant objected again on the same grounds. The court observed that defense witnesses had "just kept blurting out about all the fighting that was going on" which had opened the door for the state to cross-examine on that topic. The court ruled:

> "There's already enough in the case that this would not inflame the jury in any way and * * * [defendant] has alluded that there is a reference to [P] misusing his credit cards and there's a reference to him having to cancel his credit card and a reference to this interaction at the * * * address as being a criminal matter, and by the portrayal that isn't what this was all about. And so I'm going to overrule the objection."

In response to the question, defendant said that the officer told him that P had called 9-1-1 to report that he had punched her in the face.

On redirect, defense counsel asked defendant, "[P] accused you of hitting her in the face at around one a.m.

Were you [there] at one a.m.?" Defendant replied, "No." Defense counsel also asked defendant whether he had been charged with violating a restraining order, and defendant admitted that he had.

The state recalled House to rebut defendant's testimony that defendant had not been at the Linnell address at 1:00 a.m. The state asked House whether he had noticed any physical evidence supporting the timing of P's complaint. Defendant objected that the evidence was not relevant to the DUII trial and that the prejudice outweighed any probative value.

The court excused the jury for the state to make an offer of proof. House testified that P had a fresh smear of blood on her upper lip. The state introduced photos of P's injury, in support of House's testimony, showing a fresh injury to P's lip and to the inside of her mouth. House testified that P's injury was consistent with the timing of a 9-1-1 call reporting a violation of the restraining order.[7] The trial court ruled,

> "I'm finding that this is relevant to—as impeachment evidence to show that it was more than a verbal * * * incident. That there was some physical things going on. And as well the timeline as described * * * goes to disprove the timeline as set forth by the defendant's testimony and goes to prove the state's theory.
>
> "It isn't unduly prejudicial. The jurors sort these things out all the time without difficulty. So I'm going to * * * overrule the objections."

Reasserting OEC 403, defendant objected to the admission of the photographs. The court overruled the objection, explaining that the evidence demonstrated the freshness of the injury when House arrived at the scene and served to support the state's timeline of events.

When trial resumed, House testified that he had responded to a report of an assault in violation of a

---

[7] The state argued that it was entitled to elicit that testimony because it rebuts defendant's theory that P made a false report and because the testimony "supports a different timeline" that defendant was at the Linnell address "at the time or near the time of the 911 call."

restraining order and that he had seen P's fresh injury to her lip and mouth. The court admitted the photos of her injuries.

On appeal, defendant makes four related assignments of error challenging the state's inquiry whether he was not supposed to have contact with P, the copy of the restraining order, the testimony concerning his violence against P, and the photographs of her injuries. As to each ruling, defendant first argues that the evidence was not relevant under OEC 401 to prove a fact of consequence to the determination of his guilt. Next, defendant argues that he did not "open the door" to the evidence. Finally, defendant argues that even if it were relevant under OEC 401, the trial court abused its discretion in admitting the evidence because the probative value was substantially outweighed by the danger of unfair prejudice under OEC 403. The state responds that the trial court did not err because the evidence was admissible to "rebut defendant's primary defense to the DUII charge," and because defendant "opened the door" to the evidence by presenting testimony about his contact with P.

We begin with defendant's argument that the evidence at issue in this case was not relevant under OEC 401, and we conclude that the court did not err in admitting the evidence in light of defendant's conflicting accounts of the sequence of events on the evening in question. *State v. Stafford*, 157 Or App 445, 454, 972 P2d 47 (1998), *rev den*, 329 Or 358 (1999) (relevancy of evidence "depends on the particular facts of each case"). Our conclusion rests upon the principle that OEC 401 sets a "'very low threshold' for the admission of evidence, that is, 'evidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action.'" *State v. Sparks*, 336 Or 298, 307-08, 83 P3d 304 (2004) (quoting *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000)). "Relevance determinations under OEC 401 * * * can yield only one correct answer; evidence either is relevant or it is not." *Titus*, 328 Or at 481. "If the item of evidence affects the balance of probabilities to any degree, it is logically relevant." *State v. Hampton*, 317 Or 251, 255, 855 P2d 621 (1993) (internal quotation marks omitted). In this case, the evidence at

issue satisfied the minimum threshold of logical relevancy required by OEC 401. We address the two matters of relevance in turn.

First, the inquiry whether a restraining order prevented defendant from contacting P responded to his theory of defense. His defense depended upon a sequence of events that he presented at trial that was significantly different from the sequence of events that he had told officers at the motel. That defense was built on a relationship with P that he said had been on and off again for almost seven years. Defendant explained his present account by suggesting, as the evening began, that he had a close involvement with P. He told of dinner with P and checking into the motel with her. As she left, he trusted her with his bank card but quickly learned she was misusing it. He said that he had driven while sober and was surprised to find P with Engel at Engel's house.[8] Bare testified that defendant had a "fight" with P because she was "cheating" on him. According to defendant, his close but contentious relationship with P spurred him to drink heavily but only after he returned to the motel, sometime after midnight.

As the Supreme Court has observed, "once an issue is raised on direct examination, it is fair game on cross-examination, even to the extent of inquiring into a different set of facts [from] those that were elicited on direct." *State v. Stevens*, 328 Or 116, 133, 970 P2d 215 (1998). Here, defendant raised his supposedly close and troubled relationship with P. Given a low relevancy threshold, that made the restraining order relevant. Although he claimed to enjoy an on-again, off-again relationship with P, evidence of a restraining order tends to show that a close relationship had ended, may have ended, or was in the process of ending. Defendant claimed to have been with P at dinner, when checking in to the motel, and when trusting her with his bank card, but the restraining order forbade such contact with her. Evidence of a restraining order made less plausible defendant's trial testimony about driving earlier and drinking only later—a claim premised upon defendant's

---

[8] Later, defendant testified that he "had words" with the Engels, but he said he "left before it got too heated."

drinking only in reaction to his alleged surprise at finding P with Engels at Engels' house. The restraining order put in doubt the nature of defendant's contacts with P earlier in the evening, as well as his explanation of his emotional response later in the evening. By shedding light on the relationship—a topic opened by defendant in his defense, the state's inquiry about the restraining order and the restraining order itself were relevant and therefore permissible.

Second, the testimony that defendant had hit P and the photos showing the injury were relevant to the state's timeline of events. Defendant testified that he was not at the Linnell address at 1:00 a.m., and, that substantially before that time, he had returned to the motel. Yet, House testified that he observed P with a smear of blood—a fresh wound on her lip and mouth. As shown in photographs, the officer said the injury was consistent with P's statement that defendant had struck her just before she called 9-1-1. Such evidence that defendant had assaulted P around near 1:00 a.m. coincided with the timing of House's dispatch; it had some tendency to make less likely defendant's account of when he was driving and when he had started drinking. Such evidence was relevant.

Anticipating that conclusion, defendant argues that the evidence is unfairly prejudicial under OEC 403. Accordingly, we review for abuse of discretion. *Titus*, 328 Or at 481.

> "Evidence is properly excluded under OEC 403 if its 'probative value' is 'substantially outweighed by,' *inter alia,* 'the danger of unfair prejudice, confusion of the issues, or misleading the jury.' Evidence is 'unfairly prejudicial' if it appeals to the preferences of the factfinder for reasons that are unrelated to its capacity to establish a material fact."

*State v. Borck*, 230 Or App 619, 636, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010). "We generally defer to the trial court's decision regarding 'whether the probative value of the evidence is substantially outweighed by the potential for prejudice.'" *State v. Sewell*, 257 Or App 462, 468-69, 307 P3d 464, *rev den*, 354 Or 389 (2013) (quoting *State v. Williams*, 313 Or 19, 29-30, 828 P2d 1006, *cert den*, 506 US 858 (1992)).

The party seeking exclusion of the evidence, here defendant, bears the burden of persuasion. *State v. Andrews*, 262 Or App 161, 167, 324 P3d 534, *rev den*, 355 Or 703 (2014).

Defendant urges that the probative value of the evidence "was minimal" and was "collateral to the question of whether defendant drove while intoxicated." Defendant contends that the prejudicial effect of the evidence was very high, because the evidence was "emotionally charged and distracting." The state responds that the probative value of the evidence was high because, by defeating defendant's chronology, "it directly contradicted defendant's defense to the DUII charge." The state contends that the prejudicial effect was low because there was little likelihood that the jury would confuse the issues at trial and convict defendant based on P's assault allegations.

Mindful that we review for an abuse of discretion, we agree with the state. The trial court determined that the disputed evidence had some bearing on defendant's theory of the case and on his credibility as to a disputed timeline. The trial court observed that, on defendant's initiative, the jury had already heard much contentious background—from P's alleged misuse of a credit card to her alleged false report of defendant's drunk driving—and trusted that those things would not inflame the jury in any way. Similarly, the court was confident that the jury could consider the assault evidence for its timing purpose while distinguishing that act from the DUII charge itself. The trial court determined that the prejudicial effect of the evidence was low and that the jury was unlikely to be confused. In making that conclusion, the trial court did not act outside the bounds of its discretion.

In all, the trial court did not err in admitting the disputed evidence.

Affirmed.