Argued and submitted June 29, 2020, reversed and remanded March 3, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PATRICK DALE DESHAW,
*Defendant-Appellant.*

Marion County Circuit Court
17CR26889; A168918

483 P3d 34

Defendant was convicted of four counts of second-degree sexual abuse, based on four acts of oral sex with a 16-year-old boy. Over defendant's objections, the trial court allowed the state to elicit testimony from two witnesses regarding an uncharged act of anal sex between defendant and the boy. Defendant contends that the trial court erred in allowing such evidence, either because it was irrelevant under OEC 401 or because it was substantially more unfairly prejudicial than it was probative under OEC 403. *Held*: The trial court erred in admitting evidence of the uncharged act of anal sex. The evidence was not relevant under OEC 401, and the state's argument to the contrary—that it was relevant to establishing a timeline—fails on this record. Further, the error was not harmless. Given the different nature of the uncharged act and the charged acts, the vivid detail with which the uncharged act was described, and the complainant's youth, there is some likelihood that it affected the verdict.

Reversed and remanded.

Mary Mertens James, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Defendant was convicted of four counts of second-degree sexual abuse, based on four acts of oral sex with a 16-year-old boy. Defendant raises three assignments of error on appeal. First, he contends that the trial court erred in admitting evidence of an uncharged act of anal sex between him and the boy. Second, he argues that the trial court erred during sentencing in failing to apply the "shift-to-I" rule—and the state concedes that error. Third, he challenges on Sixth Amendment grounds the trial court's instruction to the jury that only 10 jurors needed to agree on guilt. Defendant's first assignment of error is well taken, necessitating reversal of his convictions, and obviating the need to address his other assignments of error. Accordingly, we reverse and remand.

## FACTS

We state the facts pertinent to the legal issues before us. Regarding the alleged evidentiary error, we describe the challenged evidence in context, with reference to the state's relevancy arguments, and, as to the harmlessness of any error, we look to the trial record as a whole. *State v. Garrett*, 350 Or 1, 6, 248 P3d 965 (2011); *State v. Prieto-Rubio*, 262 Or App 149, 155, 324 P3d 543 (2014), *aff'd*, 359 Or 16, 376 P3d 255 (2016).

As a youth, P was adjudicated in juvenile court for acts that, if committed by an adult, would constitute unlawful sodomy. Because of overcrowding at the juvenile detention facility, P was held for a time at the Marion County Jail. For part of that time, P, who was 16 years old, shared a cell with defendant, who was in his 50s.

According to P, defendant engaged in oral sex with P while they shared a cell. By the time of trial, P's memory of the incidents was hazy, because over eight years had passed, and he did "not really remember" how many times oral sex had occurred. However, he believed that it had happened twice. The first time happened probably shortly after he began sharing a jail cell with defendant. Defendant told P to pull down his pants. P considered whether or not to do it, but he decided to do it, given the prison culture. He did not

actually want to do it, but he went along with it. Defendant performed oral sex on P. Defendant did not threaten P, and P did not resist. When he finished, defendant did not say anything, but P felt obligated to reciprocate, so P then performed oral sex on defendant.

Asked at trial if "any other sexual contact" with defendant had occurred, P answered that he thought the same thing (an exchange of oral sex) "might have happened another time," which was "basically, the same story." The prosecutor then asked, "Was there an incident that involved him trying to insert his penis into your anus?" P answered yes and, in response to further questioning, said that he believed that it was after the first oral-sex incident but that he did not know if it was the same day.

The prosecutor then asked questions about the "additional exchange with oral sex" that P had mentioned. P testified that he was not certain that there was a second incident and could not guarantee that there was a second incident, but he thought so. He explained that it is hard to differentiate between events because "time seems to blur when you're in a cell." The second incident was essentially the same as the first. P remembers defendant performing oral sex on him. P does not remember performing oral sex on defendant, but he testified that he likely would have done so because he would have felt obligated to reciprocate. The second incident was on July 4. P remembers the date because he remembers later telling a detective that he could see or hear fireworks.

While testifying about the second incident, P alluded briefly to the anal-sex incident, noting that all of his sexual contact with defendant had been oral sex, except for the one instance of "not really successful" anal sex:

"[PROSECUTOR]:   Okay. And so the second, I guess, [oral sex] exchanges that happened also took place in your cell?

"[P]:   Yes.

"[PROSECUTOR]:   Anyone else in there besides you and the defendant?

"[P]:   No.

"[PROSECUTOR]:    Wearing the same jail uniform?

"[P]:    Yep.

"[PROSECUTOR]:    Okay. And what—what happened this time?

"[P]:    "I believe, basically the same thing. I mean, it (indiscernible)

[EXCHANGE BETWEEN THE COURT AND THE WITNESS ABOUT MOVING CLOSER TO MICROPHONE]

"[P]:    Thank you. Talking about the second incident, right?

"[PROSECUTOR]:    Mm-hmm.

"[P]:    So I think it was just a lot of oral sex. That was it, I mean. I mean, I think at some point, whether it was the first or second time, I don't know, but anal sex was attempted, but not really successful.

"[PROSECUTOR]:    "Okay. Okay. So then after the anal sex that was attempted, that's when the—the second grouping of oral sex happened?

"[P]:    Yes.

"[PROSECUTOR]:    Okay. And that was on the same day?

"[P]:    I believe so.

"[PROSECUTOR]:    It's okay if you don't remember. And you believe it was around Fourth of July?

"[P]:    Yes."

P then returned to testifying about the second incident.

P did not report defendant's alleged sexual abuse to jail authorities, but, after returning to a juvenile detention facility, he eventually reported it to a counselor at the Oregon Youth Authority. In 2015, a police detective interviewed P. The detective testified at trial that P had told her the following. There had been multiple instances of sexual contact between defendant and P. The first incident was an exchange of oral sex on P's first or second day in the cell, which, according to jail records, would have been July 2 or 3. There was also an attempt at anal sex later that same day,

during which defendant told P to bend over, put margarine from a meal tray on his own erect penis and P's anus, and attempted penetration but did not achieve full penetration because he "wouldn't reach" so it was only "a little bit" of penetration. And then there was another exchange of oral sex on July 4. P had remembered the date of the second oral-sex incident because he remembered something about fireworks.

After interviewing P, the police interviewed defendant, who denied any sexual contact with P. Defendant expressed the belief that P was retaliating against him for reporting P as suicidal in jail.

In 2017, defendant was indicted on four counts of second-degree sexual abuse, ORS 163.425, based on four acts of oral sex.[1] Before trial, defendant moved to exclude any evidence of the anal-sex incident, as irrelevant under OEC 401 and unfairly prejudicial under OEC 403. The trial court denied the motion, reasoning that the evidence "was relevant to the timeframe that the defendant is alleged to have acted" and as "a reference point to the victim in his testimony." The court further stated that the evidence's relevance outweighed its potentially prejudicial effect. The court did preclude anyone from asserting that the anal intercourse was a criminal act or a charged crime.

Defendant proceeded to a jury trial. During both P's testimony and the detective's testimony, defendant renewed his objection to the admission of evidence about the anal-sex incident. The court overruled those objections on the same grounds.

The jury found defendant guilty of all counts, by unanimous verdicts. The court sentenced defendant to consecutive sentences of 30 months (Count 1), 30 months (Count 2), 30 months (Count 3), and 25 months (Count 4)—for a total prison sentence of 115 months—and 36 months of post-prison supervision. Defendant appeals.

---

[1] As relevant here, it is second-degree sexual abuse to subject another person to oral sex without the person's consent, ORS 163.425(1)(a), and a person under 18 years of age "is considered incapable of consenting to a sexual act," ORS 163.315(1)(a). Defendant was charged under the 2010 version of the statutes, which were materially the same.

ANALYSIS

For evidence of uncharged bad acts by a criminal defendant to be admitted under OEC 404(3), the evidence must be relevant to a nonpropensity purpose, and its probative value must outweigh any unfair prejudice. *State v. Baughman*, 361 Or 386, 404, 393 P3d 1132 (2017). Whether evidence is relevant to a nonpropensity purpose is a question of law that we review for legal error. *Id.* at 406. Whether the probative value of evidence outweighs any unfair prejudice is a discretionary call that we review for abuse of discretion. *Id.*

Under OEC 401, "evidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Grubb*, 279 Or App 458, 466, 379 P3d 715, *rev den*, 360 Or 423 (2016) (internal quotation marks omitted). Evidence meets that "very low threshold" if it "affects the balance of probabilities to any degree." *Id.* (internal quotation marks omitted). Relevancy "depends on the particular facts of each case." *State v. Stafford*, 157 Or App 445, 454, 972 P2d 47 (1998), *rev den*, 329 Or 358 (1999).

Here, the trial court allowed both P and the detective to testify about the alleged anal-sex incident on the basis that it "was relevant to the timeframe that the defendant is alleged to have acted" and was "a reference point to the victim in his testimony." Defendant acknowledges that, in appropriate circumstances, establishing a timeline can be a valid basis to admit evidence of an uncharged act. For example, in *Grubb*, the defendant was charged with driving under the influence of intoxicants (DUII), and we held that the trial court did not err in admitting evidence that he had assaulted his girlfriend on the night of the alleged DUII incident, where the timing of defendant's alcohol consumption was the primary dispute at trial, and the assault evidence tended to prove that he had driven closer in time to drinking than he claimed. 279 Or App at 460, 468.

Defendant contends that the challenged evidence had no such relevance in this case. The prosecution theory was that defendant and P exchanged oral sex on July 2 or 3 (the basis for Counts 1 and 2) and again on July 4 (the basis

for Counts 3 and 4), which was nonconsensual because P was 16 years old at the time and thus legally incapable of consent. Both P and the detective testified about two separate oral-sex incidents on two separate days. Meanwhile, the defense theory was that defendant had no sexual contact with P at any time. Defendant argues that, in this case, the anal-sex evidence was entirely irrelevant, because it "establishes a 'timeline' for the day, but to what end?" All events have *some* temporal relationship to other events, defendant argues, but, unless that temporal relationship has some bearing on a material issue of fact, the mere coexistence of charged and uncharged acts on a single timeline cannot justify the admission of evidence of uncharged bad acts.

In response, the state argues that the anal-sex incident was relevant as a reference point in time for P, particularly because defendant's trial occurred years after the alleged crimes and P had an imprecise memory about how many times he had engaged in oral sex with defendant. The state describes the anal-sex incident as providing an important temporal anchor for P, because, according to the state, the one thing that P could remember with certainty was that there was one oral-sex incident *before* the anal sex and another *after* it. The state further argues that the "memorable and inflammatory" nature of the uncharged act was precisely what made it so probative as a reference point.

The difficulty with the state's argument is that it is theoretically sound but unconnected to the actual evidence. P never used the anal-sex incident as a temporal anchor. When P failed to mention the anal-sex incident in response to an open-ended question about sexual contact with defendant, the prosecutor purposefully elicited testimony about it. Thereafter, P mentioned the anal-sex incident only once on his own, almost in passing, to illustrate a different point. The little evidence about when that incident happened relative to the oral-sex incidents was also vague and inconsistent. P remembered the anal-sex attempt happening after the first oral-sex incident, but he did not remember which day it was or "whether it was the first or second time," evincing enough uncertainty to prompt the prosecutor to reassure him that it was "okay if you don't remember." P eventually agreed that he "believed" that it was "around Fourth of

July." Meanwhile, the detective testified that P had told her in 2015 that the anal-sex incident had occurred later on the same day as the first oral-sex incident on July 2 or 3.

Whether P remembers the anal-sex incident as having occurred on the same day as the first oral-sex incident, remembers it as having occurred on the same day as the second oral-sex incident, or does not remember which day it occurred, the key point is that nothing about P's or the detective's testimony suggested that *P* viewed the anal-sex incident as any kind of temporal anchor for the oral-sex incidents. The state's evidence would suggest that, if all three incidents occurred, the anal-sex incident likely occurred between the two oral-sex incidents in time. However, there is nothing to suggest that that sequence of events was significant to P in terms of his ability to remember the oral-sex incidents. P repeatedly testified to his poor memory of the events, and, as to why he believed there was more than one oral-sex incident, P offered no explanation, other than to say that he thought that it had happened more than once. The *only* temporal anchors that P ever used during his testimony were his first day in the jail cell with defendant, which he used to estimate when the first oral-sex incident occurred, and the July 4th holiday, which he remembered as the date of the second incident because of fireworks.

We therefore agree with defendant that the trial court erred in overruling his objections to P's and the detective's testimony about the anal-sex incident, based on its prior ruling that the evidence was "relevant to the timeframe that the defendant is alleged to have acted" and "a reference point to the victim in his testimony." P never used the anal-sex incident as a reference point—at most, he tried to answer the prosecutor's questions about timing and was assured that it was okay if he did not remember—nor was the specific sequence of events or their timing material to the state's case. Although there could be scenarios in which such evidence of an uncharged act would be relevant, here, the evidence that defendant attempted to have anal sex with P at one point made it no more or less likely that defendant twice engaged in oral sex with P. *See Grubb*, 279 Or App at 466 (relevance standard). The trial court therefore erred

in overruling defendant's objections to the admission of the evidence.

Having concluded that it was error to admit the evidence, the next question is whether the error was harmless. If there is little likelihood that an evidentiary error affected the verdict, we must affirm, notwithstanding the error. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In conducting a harmlessness analysis, our focus "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling." *Id*. The "defendant has the burden to demonstrate that the error affected a substantial right." *State v. Nguyen*, 293 Or App 492, 498, 429 P3d 410 (2018).

Defendant argues that the error was not harmless, because "both the bare fact of the uncharged-misconduct evidence and the detail with which the state presented it was highly inflammatory," creating the "risk that the jury would convict defendant based on a predatory character, rather than on the weight of the evidence" of the charged crimes. *See State v. Wright*, 283 Or App 160, 178, 387 P3d 405 (2015) (holding that admission of uncharged-misconduct evidence was not harmless, where it was "highly inflammatory, and, as such, created a risk that the jury would convict defendant based on his past acts or his character"). In response, the state makes a single argument: that the jury's sole task was to determine whether defendant engaged in the charged conduct—four oral-sex acts with P—and so it did not matter whether defendant engaged in anal sex with P. Of course, something analogous could be said in any case in which evidence of an uncharged bad act is erroneously admitted, precisely because it is an *uncharged* act.

We agree with defendant that the error was not harmless in this case. That is, we cannot say that there is little likelihood that it affected the verdict. Defendant denied having any sexual contact with P. Although P testified unequivocally that sexual contact occurred, there were aspects of P's testimony and the circumstances of the case that the defense could use to attack his credibility, including P's initial denial of any sexual contact with defendant (to a

correctional officer at the jail), P's delayed reporting, and the fact that P spoke with the police for the first time five years after the alleged crimes. The state's case was also necessarily weakened by P's repeated statements at trial that he did not remember the events well and was unsure how many times oral sex had occurred. Into that mix was injected highly inflammatory evidence of an uncharged act that itself would obviously be a crime. Defendant fairly describes that evidence as "highly inflammatory, demeaning evidence presented in a vividly detailed manner that was likely to linger in the jurors' minds, causing the jury to confuse the issues and bear ill will toward defendant." The state itself describes it as relating to "memorable and inflammatory conduct." Moreover, the evidence did not come in by happenstance but was elicited by the prosecutor, from both P and the detective, suggesting that the prosecutor made a tactical decision that it could be significant to the jury. Given the different nature of the uncharged act than the charged acts, the vivid detail with which it was described, and P's youth, we cannot say that the erroneous admission of such evidence had little likelihood of affecting the verdict.

Reversed and remanded.