***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted March 22, reversed and remanded April 19, 2023

In the Matter of I. G.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

I. G.,
*Appellant.*

Multnomah County Circuit Court
22CC02030; A178588

Monica M. Herranz, Judge pro tempore.

Alexander C. Cambier and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded.

**KISTLER, S. J.**

The trial court committed appellant to the custody of the Mental Health Division for a period not to exceed 180 days after finding that she suffered from a mental disorder and was a danger to others. On appeal, we agree with appellant that the trial court erroneously relied on hearsay evidence in making that finding and that the error was not harmless. We accordingly reverse the trial court's judgment and remand for further proceedings.

Appellant suffered domestic abuse in Kazakhstan and was hospitalized for mental health issues in that country.[1] Later, she immigrated to the United States, where she stayed with her extended family. While visiting her sister's family in Utah, appellant initially was "perfectly fine" and an "amazing aunt" to her sister's children. But then her mental health began to deteriorate. As her nephew testified, appellant began "accusing [her sister and brother-in-law] of rape and that kind of stuff, claiming that [her nieces and nephews] were her kids, saying that she's going to kill [her sister and brother-in-law] with shovels; and it was all words until she actually hit the dog with a shovel."

Appellant's family tried to get her to go to a hospital, but she refused. Later, her family asked a local agency to come to their home to assess appellant's mental stability. Because of appellant's threats, police officers accompanied the agency personnel. When the officers arrived, appellant refused to leave her room, and the officers went upstairs to talk to her. When they did, appellant opened the door and "started charging at [the police officers] with * * * some scissors." Ultimately, the officers talked appellant into throwing the scissors away. The police left while the agency personnel were speaking with appellant. After the agency assessed her, appellant remained in her sister's home.

After that episode, appellant's father drove to Utah and brought her back to a Portland medical facility. The psychiatrist who examined appellant diagnosed her as having

---

[1] We state the facts pertinent to the legal issues before us. Regarding the alleged evidentiary error, we describe the challenged evidence in context, and, as to the harmlessness of any error, we look to the trial record as a whole. *State v. Deshaw*, 309 Or App 535, 536, 483 P3d 34 (2021).

a "psychosis, unspecified." The psychiatrist explained that, based on information obtained from appellant's family, her "concern [was that appellant was a] danger to others." Specifically, the psychiatrist based her opinion on threats that appellant reportedly had made and reported "documentation of * * * her cutting out, out of pictures, the head of certain family members, and fashioning and making knives." The psychiatrist added, "So, I don't have further clarification of that, but that's what [was reported to me]."

Given that evidence, the trial court found that appellant suffers from a mental disorder. It also found that "you do present a danger to others because you have had actions based on [your] delusions * * * where you were threatening your family with a knife, coming towards the police officers with scissors, and a dog ended up injured as a result of a shovel to his head."

On appeal, appellant raises two assignments of error. We begin and end with her first assignment of error. Shortly after appellant's nephew testified that "[appellant] actually hit the dog with a shovel," appellant objected that that statement was hearsay. The trial court overruled the objection as untimely but explained that it would "give that testimony the weight that it deserves."

On appeal, appellant argues that the trial court erred in overruling her objection as untimely. She contends that it was not apparent when her nephew testified that his statement regarding the dog was hearsay and that she objected as soon as that fact became apparent. The state concedes on appeal that appellant's objection was timely and that the challenged statement was inadmissible hearsay. The state argues, however, that admitting the statement was harmless error because there was clear and convincing evidence that appellant was a danger to others, "even absent the testimony about her hitting the family dog with a shovel."

We accept the state's concession that the trial court erred in overruling appellant's objection. We disagree, however, that admitting the hearsay statement was harmless. Evidentiary error is not presumed to be prejudicial. OEC 103(1). As a result, we will not reverse the trial court's

judgment because of the erroneous admission of the nephew's hearsay statement unless we are persuaded that the statement's admission prejudiced appellant. *See State v. Hudson*, 279 Or App 543, 554-55, 380 P3d 1025 (2016) (stating harmless error standard for evidentiary error). In deciding that issue, the question is not, as the state frames it, whether the trial court could have reached the same conclusion without the inadmissible hearsay. Rather, the question is whether there is little likelihood that the admission of the inadmissible hearsay affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?").

In considering that question, we recognize that, in overruling appellant's objection, the trial court explained that it would give the hearsay statement the weight it deserved, and it later used the passive voice in referring to the injury the dog sustained. However, the trial court's finding, read as a whole, makes two points clear: The trial court found, based on the erroneously admitted hearsay, that (1) appellant caused the dog's injury and (2) she did so with the same implement (a shovel) with which she threatened to kill her sister and brother-in-law.

On the first point, the trial court stated, "I'm also finding that, based on the evidence, you do present a danger to others because you have had actions based on [your] delusions *** where *** a dog ended up injured as a result of a shovel to his head." That statement reveals that the trial court found that appellant's "actions based on [her] delusions" were the cause of the dog's injury, and the erroneously admitted hearsay was the only direct evidence supporting that finding.

On the second point, although there was other evidence that the dog's face had been severely cut, only the inadmissible hearsay statement identified both the person who injured the dog—appellant—and the means by which that injury occurred—a shovel. Moreover, the court's finding that appellant used a shovel to injure the family dog gains added significance in light of her threat to kill her sister and

brother-in-law with a shovel. Appellant's nephew made the point succinctly: His aunt's threat to kill his parents with a shovel "was all words until she actually hit the dog with a shovel."

We recognize that the court identified two other threatening actions that resulted from appellant's delusions and informed its finding that she posed a danger to others: one related to scissors and the other to a knife. However, the only action that resulted in actual injury was the injury to the dog's face with a shovel—a finding that derived directly from the inadmissible hearsay. The other two actions the court identified posed a risk of injury, not an actual injury.

Additionally, although the trial court identified two other threatening actions undertaken by appellant, the circumstances surrounding those actions demonstrate that they posed a lesser level of risk than the actual injury to the dog. Regarding the scissors, the trial court found that appellant was "coming towards the police officers with scissors." While that act raises obvious concerns, the officers talked appellant into putting the scissors down, the officers then left the agency personnel alone with appellant while they spoke with her, and the agency personnel left appellant in her sister's home without any apparent restriction. For all that appears from the record, neither the police nor the agency personnel determined that appellant posed an immediate risk of harm to others.

Regarding the threatening use of a knife, the trial court found that appellant was "threatening [her] family with a knife." That finding could derive from two separate evidentiary sources. First, when the investigator asked appellant about "the allegation that she had threatened family members with a knife," appellant replied that she had a knife in her bathrobe "to s[l]ice an apple and cheese, I did not intend to do anything bad." It is difficult to see how the trial court could have inferred from appellant's denial of the allegation that she was using the knife to threaten her family. There was no other evidence regarding her use or nonuse of the knife.

Second, the psychiatrist testified that she based her opinion that appellant was a danger to others on actions

that appellant's family reported to her, which we have set out above. There is no evidence that those reported actions included overtly threatening family members with a knife. Beyond that, although the out-of-court reports on which the psychiatrist relied were admissible to show the basis for the psychiatrist's opinion, they were not admissible for the truth of the matter asserted. *See McCathern v. Toyota Motor Corp.*, 332 Or 59, 70-71, 23 P3d 320 (2001). There is, in short, little or no evidentiary basis for the trial court's last finding, and no basis for saying that that finding renders its reliance on the hearsay statement harmless.

The most significant finding that informed the trial court's decision—that appellant caused the actual injury to the dog—derived from the erroneously admitted hearsay. It follows, we conclude, that the erroneous admission of that evidence tended to affect the trial court's finding that appellant posed a danger to others. We accordingly reverse the trial court's judgment and remand for further proceedings.[2]

Reversed and remanded.

---

[2] In the judgment, the trial court imposed restrictions that resulted from its finding that appellant posed a danger to others. In reversing the court's judgment, we vacate those restrictions.