No. 272 April 2, 2025 329

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

David DOUMITH,
*Plaintiff-Appellant,*

*v.*

Khalil AZAR,
an individual,
and Daniel Doumith, an individual,
*Defendants-Respondents.*

Multnomah County Circuit Court
19CV26665; A180298 (Control)

Elsie DOUMITH,
individually and as Trustee of the Nazim and Elsie
Doumith Revocable Trust,
*Plaintiff-Appellant,*

*v.*

Daniel DOUMITH,
an individual;
Khalil Azar, individually and as Trustee of the Khalil
and Venus Azar Rovocable Living Trust;
Tonya Azar Doumith, an individual;
Elissa Doumith, an individual;
and Celine Doumith, an individual,
*Defendants-Respondents.*

Multnomah County Circuit Court
19CV26663; A180309

Christopher A. Ramras, Judge.

Argued and submitted October 10, 2024.

Tyler J. Bellis argued the cause for appellants. Also on the briefs were J. Kurt Kraemer and McEwen Gisvold LLP.

Matthew J. Kalmanson argued the cause for respondents Daniel Doumith, Tonya Doumith, Elissa Doumith, and Celine Doumith. Also on the brief was Hart Wagner LLP.

James R. Cartwright and Cartwright Law PC filed the brief for respondent Khalil Azar.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

In these appeals in consolidated civil cases, plaintiffs Elsie Doumith and David Doumith assign error to the grant of defendants' renewed motions to dismiss based on the doctrine of *forum non conveniens*. Plaintiffs contend that the trial court erred in granting the renewed motions after having denied earlier *forum non conveniens* motions, failed to view plaintiffs' allegations in the light most favorable to them, and ultimately abused its discretion in deciding that the relevant considerations weighed so heavily in favor of litigating in Guadeloupe that it would be contrary to the ends of justice for the actions to proceed in plaintiffs' chosen forum of Oregon.

As described below, we conclude that the trial court did not err in the manners asserted. We are aware of no authority that prevented the court from revisiting the *forum non conveniens* issue on renewed motions that built on the earlier motions and incorporated information from intervening discovery. As for the court's ruling, its approach was consistent with that described in *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 376 P3d 960 (2016), and, in the somewhat unusual circumstances of this case, the court did not abuse its discretion in deciding that the standard for *forum non conveniens* dismissal was met.[1] Accordingly, we affirm.

## I.   BACKGROUND

We begin with a brief overview of the parties' relationships and the litigation at issue on appeal. Like the trial court, we "must assume the truth of all well-pleaded facts alleged in the complaint and give plaintiff, as the nonmoving party, the benefit of all favorable inferences that may be drawn from those facts." *Id.* at 95 (internal quotation marks omitted).

---

[1] We also reject, without detailed written discussion, plaintiffs' second assignment of error, in which they challenge the trial court's denial of their motion to compel production from 23 potential witnesses located in Guadeloupe and Martinique. The court concluded that the discovery request was overbroad and noted that plaintiffs were free to narrow it. Reviewing for abuse of discretion, *Doe v. Denny's, Inc.*, 146 Or App 59, 67, 931 P2d 816 (1997), *aff'd on other grounds*, 327 Or 354, 963 P2d 350 (1998), we conclude that the court did not abuse its discretion in ruling as it did.

These appeals concern two lawsuits involving members of the Doumith family.[2] Until recently, the family was headed by Nazim and Elsie Doumith, a married couple who lived on Guadeloupe, a Caribbean island that is part of France. Nazim died in 2021.[3] Elsie continues to live on Guadeloupe and is the trustee of the Nazim and Elsie Doumith Revocable Trust (the trust). Nazim and Elsie have two adult sons—David and Daniel—who also live on Guadeloupe. Daniel lives with his wife Tonya, and they have two daughters, Elissa and Celine. (We refer to Tonya, Elissa, and Celine collectively as Daniel's family.) Both Elissa and Celine were domiciled in Portland while attending college and either returned or intended to return to Guadeloupe after college. Finally, Dr. Khalil Azar is Tonya's father and a longtime friend of Nazim and the Doumith family; he lives in Portland.

One lawsuit was brought in 2019 by David against Daniel and Azar. David owned a bank account at an Oregon bank and an investment account at a Portland brokerage firm. Azar was a co-owner of the bank account and was authorized to buy, sell, and trade in the investment account. Starting in 2015, Daniel was also authorized to buy, sell, and trade in the investment account. David alleged in his complaint that Daniel and Azar "made, directed, approved and/or otherwise caused numerous improper and unauthorized transfers of funds" from the investment account into the bank account and from there into other accounts "to and/or for the benefit of themselves and/or their immediate family members." The complaint did not expressly limit those allegations to a particular timeframe, but it identified August 2017 to December 2018 as a period in which Daniel and Azar made transfers totaling $204,600, with approximately half that amount going into an Oregon bank account owned by Daniel. Based on those allegations, David asserted claims for breach of fiduciary duty, conversion, civil conspiracy, unjust enrichment, and money had and received against both Azar and Daniel.

---

[2] Because most of the parties in this case share the same last name, we will use first names to refer to members of the Doumith family.

[3] Although Nazim was still alive when the litigation began, he was never a plaintiff in either action.

The other lawsuit was brought in 2019 by Elsie, personally and as trustee of the trust, against Daniel, Daniel's family, and Azar.[4] Elsie alleged that, at all material times, she and Nazim were vulnerable persons—Elsie by reason of her age, and Nazim by reason of his age and diminished capacity from dementia and other ailments. Elsie asserted claims of conversion, unjust enrichment, and money had and received against all defendants and, against Daniel and Azar, also asserted claims for breach of fiduciary duty, financial abuse of a vulnerable person, civil conspiracy, and an accounting.

According to Elsie's complaint, the trust was initially funded by proceeds from the sale of Portland real property owned by Nazim and herself. In 2013, Nazim and Elsie used money from the trust to open a brokerage account at a firm in Portland. They designated Azar as their agent and attorney-in-fact to buy, sell, and trade securities for that account and, in 2015, additionally designated Daniel to act as their agent and attorney-in-fact to buy, sell, and trade securities for that account. Nazim, Elsie, and the trust also had Oregon-based bank accounts "[s]ince at least 2015" for which Azar was authorized to make decisions and transact business. Elsie alleged that Daniel and Azar "made, directed, approved and/or otherwise caused numerous improper and/or unauthorized transfers of funds," including (1) between 2015 and 2018, transferring from the brokerage account at least $217,500 to accounts owned by Daniel and his family and $125,000 to accounts owned by Azar, by "delivering falsified written transfer instructions to [the brokerage firm], falsifying checks[,] * * * and/or exerting undue influence over Elsie and Nazim Doumith," and (2) in 2017, transferring "at least $62,100" from one of Elsie's bank accounts.

In response, Daniel and his family raised the defenses of consent and offset, as well as a counterclaim for unjust enrichment, and the trial court understood that Azar would rely on factually similar defenses at trial. We describe those defenses here, not because we assume their truth (as we do with well-pleaded allegations in the complaint,

---

[4] Elsie's action also names the Khalil and Venus Azar Revocable Trust as a defendant. No facts regarding that trust are significant to our discussion; thus, we refer to both Azar personally and that trust as Azar.

*Espinoza*, 359 Or at 95), but because the nature of the dispute is relevant to the *forum non conveniens* analysis, as described more later.

As to consent, defendants claimed that, at all relevant times, they "acted pursuant to authority granted to them by" plaintiffs and "with the consent of" plaintiffs; that, in Elsie's case, "Elsie and Nazim saw financial documents relating to the conduct at issue and approved them"; and that, in David's case, David "approved of the conduct at issue." As to offset, it is undisputed that, through a variety of French corporate entities, Daniel, David, and Elsie own businesses that operate in Guadeloupe, Martinique (another Caribbean island that is part of France), and other places around the world. Daniel argued that any recovery by plaintiffs should be offset by (1) the value of his work managing plaintiffs' personal, business, and trust assets with their knowledge, and (2) amounts that he spent to purchase merchandise for stores in Guadeloupe that were owned in whole or part by Nazim and Elsie, David, or entities in which they had ownership interests.

Early in the litigation, defendants filed a series of overlapping motions to dismiss based on *forum non conveniens*. That common law doctrine allows a court to decline to exercise jurisdiction in "rare cases" in which jurisdiction and venue are proper but litigating the action in the chosen forum would be "seriously inconvenient to the parties, witnesses, or the court." *Espinoza*, 359 Or at 78. Daniel and his family filed such a motion in Elsie's case, which the court denied in January 2020; then Daniel filed such a motion in David's case, and Azar filed such a motion in Elsie's case, which the court denied in May 2020. The court stated in its January 2020 order that defendants had not established an adequate alternative forum. *See id.* at 98 (the threshold requirement for *forum non conveniens* is that "an adequate alternative forum" exists). It did not state its reasoning for the May 2020 denials.

Discovery continued, including the taking of depositions. In July 2022, seven months before the scheduled trial date, a number of significant motions were filed in close succession. Defendants filed "renewed motions" to dismiss for *forum non conveniens*. Meanwhile, plaintiffs moved to amend

their complaints. Plaintiffs also moved for partial summary judgment on the offset defense and the unjust enrichment counterclaim, arguing, among other things, that, absent allegations and evidence to support piercing the corporate veil, defendants could not obtain reimbursement from plaintiffs for merchandise purchases that benefited French corporate entities that were not parties to this litigation. Defendants asserted in response that that question should be answered under French law, not Oregon law, and that adjudicating it could require joining the French corporate entities, over whom the Oregon court lacked jurisdiction.

After hearing argument on all of the pending motions, the trial court granted defendants' renewed motions to dismiss for *forum non conveniens*. In an 11-page opinion letter, the court made findings and explained its reasoning. The court first determined that France (of which Guadeloupe is a part) provided an adequate alternative forum for the litigation—a determination that is not challenged on appeal. The court then explained why it felt that the ends of justice required that the case be litigated on Guadeloupe rather than in Oregon. The court found that "the crux of the issue" to be litigated was whether the transfers from plaintiffs' Oregon accounts were made "for inappropriate purposes and without authorization," as plaintiffs claimed, or whether defendants had authorization and implicit consent, as defendants claimed. And, the court explained, defendants' defense was highly reliant on non-Oregon evidence.

The court found that, to try to prove authorization and implicit consent, defendants would rely on evidence that the Doumith family ran integrated businesses with funds located in multiple countries, that there was "little to no distinction between the treatment of family business and personal assets," and that "Nazim Doumith made decisions on how family assets were to be used, expressing his wishes orally to family members or friends[, including Azar,] to carry out his directives."

The court further found that defendants had presented some evidence that could support that theory (versus it being a specious defense that would not actually be litigated). For example, Elsie testified in her deposition that

money in the Oregon accounts could be used to pay suppliers for corporate entities with businesses in Guadeloupe and Martinique, and that the family had invested money in Lebanon but that Nazim placed the purchased assets in their daughter-in-law's name to avoid taxes. David testified in his deposition that he was named as chief executive officer of a particular family business entity "on paper" but did not "in fact" act as such, and that family business conversations in Guadeloupe included discussions of the money in the Oregon accounts (and accounts in other countries). There was also evidence that the Oregon dispute was an offshoot of a larger dispute in Guadeloupe about separating what were previously undifferentiated family assets into individual shares. For example, the court noted, before the Oregon actions were filed, Elsie's brother had written to Daniel about his "share of the family business" and referenced the Oregon accounts as part of the family business; both David and Elsie acknowledged in their depositions that the process of splitting up the family business was underway and included discussion of the Oregon accounts; and several other lawsuits were pending in Guadeloupe regarding Nazim's capacity in his final years and the breakup of the family business.

Summing up the defense theory, the court stated that "the interconnected and unorthodox business dealings of the Doumith family give rise to a defense that Nazim Doumith authorized the transactions that occurred in Oregon and that [Azar] carried out Nazim Doumith's wishes in accordance with the Doumith family's method of conducting business." The court expressly noted that it was not ruling on the merits of that defense, which we understand to mean that it was simply identifying what would be litigated and what evidence was relevant to that litigation. The court found that trying the case in Oregon would make it very difficult, if not impossible, for defendants to put on their defense or try the unjust enrichment counterclaim, because the third-party witnesses with information about Nazim's capacity—including "doctors, nurses, care-providers, store employees, and store customers"—lived in Guadeloupe, Martinique, and Paris, and could not be required to appear in an Oregon court. Additionally, those witnesses spoke French, and Nazim's medical records were also in French.

The court recognized that there were also some important witnesses in Oregon, particularly witnesses from the brokerage firm. However, it found that "direct witness evidence is hardly ever used in French civil procedures. Instead, French courts rely on witness affidavits." In the court's view, the discovery that had already been done would allow those witnesses' written testimony to be presented in a French trial without the need for their courtroom presence (which could not be compelled). Consequently, "defendants' inability to secure French witnesses for a trial in the United States is of far greater practical concern than the burden of translating English banking documents into French." The court also noted that the litigation raised significant choice of law issues, as demonstrated by plaintiffs' motion for partial summary judgment.

As to Guadeloupe's and Oregon's respective interests in the litigation, the court summarized,

> "Guadeloupe and Martinique are where Doumith family members involved in a wide-ranging business dispute reside. They are where Doumith family members had relevant communications with one another. The islands are where Nazim Doumith presided over the family businesses until he lost capacity to do so. They are the sites where the vast majority of evidence regarding his mental capacity to guide the family businesses, and when he lost this capacity, exist. They are the sites where related lawsuits have been brought."

The court concluded that "the ends of justice require that this case be tried in the alternate forum requested by defendants. There is no other way for them to present a meaningful defense to the Plaintiffs' Claims for relief or to present their counterclaim."

The court thus dismissed plaintiffs' claims on *forum non conveniens* grounds. Plaintiffs appeal, challenging that ruling.

## II.   ANALYSIS

Plaintiffs contend that the trial court erred in dismissing their claims on *forum non conveniens* grounds. They make three specific arguments in support of their claim of

error: that it was improper for the court to grant renewed motions that did not significantly differ from the original motions that were denied, that the court failed to view plaintiffs' allegations in the light most favorable to them, and that the court ultimately abused its discretion in dismissing on *forum non conveniens* grounds.

A. *Granting the Renewed Motions after Denying the Original Motions*

Plaintiffs argue that no new facts or circumstances existed at the time of defendants' renewed motions to justify the court departing from its prior rulings denying the original motions. The initial difficulty with that argument is that plaintiffs have not identified any legal principle—either of general applicability or unique to the *forum non conveniens* doctrine—that would preclude the court from revisiting its prior rulings. Moreover, the circumstances had changed between early 2020, when the original motions were denied, and July 2022, when the renewed motions were filed, insofar as the discovery that occurred in the interim put the court in a better position to understand the nature of the Doumith family business and the parties' business dealings and, by extension, to assess what would really be at issue at trial and where that evidence was located.

The passage of time between the original motions and the renewed motions is by no means irrelevant. The stage of the litigation, the costs already incurred by the parties, and the potential prejudice to the plaintiffs in dismissing a pending action are all appropriate considerations in deciding a *forum non conveniens* motion. However, we are unpersuaded that the court was somehow bound by its prior rulings, such that it could not revisit the *forum non conveniens* issue, including considering new evidence obtained in discovery since the original motions were filed.

B. *How the Trial Court Viewed the Facts*

Plaintiffs argue that trial court did not view the facts in the manner most favorable to them and thus failed to comply with the procedure for deciding *forum non conveniens* motions that the Supreme Court described in *Espinoza*. We disagree.

As with all motions to dismiss under ORCP 21, "in considering a motion to dismiss for *forum non conveniens*, the trial court must assume the truth of all well-pleaded facts alleged in the complaint and give plaintiff, as the nonmoving party, the benefit of all favorable inferences that may be drawn from those facts." *Espinoza*, 359 Or at 95. At the same time, as explained in *Espinoza*, in deciding a motion to dismiss for *forum non conveniens*, "the trial court may find it necessary to make preliminary factual findings as to issues outside the pleadings. For example, the trial court may find it necessary to make findings pertaining to the adequacy of the proposed alternative forum, or to the availability and location of potentially relevant evidence." *Id.* at 96. The court need not necessarily "conduct extensive factfinding and conduct hearings to resolve disputed factual issues"; rather, "[i]n many cases, it may be sufficient for the parties to present their factual assertions to the court through affidavits." *Id.* Thus, the court "may consider facts asserted by the parties and resolve contested facts based on record evidence submitted by the parties." *Id.*

*Espinoza* addresses in some detail the relationship between allegations in the complaint, the factual findings necessary to decide a *forum non conveniens* motion, and a case's merits. The Supreme Court noted that the factual issues relevant to deciding a *forum non conveniens* motion "will tend to be qualitatively different from those that determine the outcome on the merits." *Id.* at 97. The complaint will allege facts "that go directly to the merits," such as, in a negligence action, alleging facts regarding "the parties' relationship, the defendant's actions, and whether those actions were the cause of the plaintiff's injury." *Id.* Because the trial court must accept well-pleaded allegations in the complaint as true, "it need not, and should not, decide those facts, even if they are disputed." *Id.* The trial court may resolve factual issues outside of the pleadings, however, which "ordinarily will concern, for example, the condition of the judiciary in the proposed alternative forum, the enforceability of a judgment from that forum, and the ease or difficulty of obtaining evidence there, as compared to the forum where the plaintiff filed its action." *Id.*

Even so, the Supreme Court acknowledged, the necessary analysis "will always require some degree of

'entanglement' with the merits." *Id.* On that point, the court cited favorably to *Van Cauwenberghe v. Biard*, 486 US 517, 528, 108 S Ct 1945, 100 L Ed 2d 517 (1988), for the proposition that courts "'must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action'" and "'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum.'" *Espinoza*, 359 Or at 97. It also emphasized that any findings bearing on the merits that are made at the *forum non conveniens* stage are relevant only to deciding the motion and thus do not "violate a party's right to trial on disputed questions of material fact." *Id.* (internal quotation marks omitted). "[A]lthough a trial court is required to accept the plaintiff's well-pleaded allegations, there is no rule barring the court from making any additional preliminary findings, as necessary, for purposes of deciding a *forum non conveniens* motion." *Id.* at 98.

The trial court in *Espinoza* had not complied with the foregoing principles. *Id.* at 120-22. The plaintiffs' complaint included a negligence claim against one of the defendants, Evergreen, based on Evergreen having performed work in Oregon on a helicopter's mechanical systems shortly before the helicopter crashed. *Id.* at 120-21. In ruling on the motion to dismiss, the trial court took the view that the crash was caused by pilot error, not Evergreen's work, such that any Oregon-based evidence was essentially irrelevant in the *forum non conveniens* analysis:

> "Despite plaintiffs' well-pleaded allegations, the trial court appears to have based its decision, at least in part, on its determination that mechanical systems installed and tested by Evergreen in Oregon played no role in the crash, and that pilot error instead was its cause. For example, in its letter opinion, the trial court stated that it would not base its decision on the possibility that the crash resulted from 'a malfunction in the warning or altimeter systems installed by Evergreen in the United States' and dismissed as speculative plaintiffs' contention that discovery might reveal evidence of such a defect."

*Id.* at 121. That legal error in the trial court's analysis amounted to an abuse of discretion. *Id.* at 122. "Rather than assuming the truth of plaintiffs' well-pleaded allegations and limiting its factual findings to those issues outside the pleadings that the trial court needed to resolve to dispose of [the] motion," the court imposed a burden on the plaintiffs to produce evidence to support their allegations and, in its absence, "appears to have made its own, contrary, finding as to the probable cause of the crash." *Id.*

Returning to the present case, plaintiffs contend that the trial court did not comply with the procedure outlined in *Espinoza* in deciding defendants' renewed motions to dismiss on *forum non conveniens* grounds. As we understand it, the gist of plaintiffs' argument is that the trial court had to accept for purposes of deciding the motions that the transfers were in fact unauthorized, as pleaded in the complaints, and could not consider any contrary evidence offered by defendants in connection with the motions.[5]

We disagree the trial court conducted its analysis in a manner inconsistent with *Espinoza*. Unlike the trial court in that case, the trial court here did not make any findings or express any view on the ultimate merits of plaintiffs' claims or defendants' defenses. It simply identified what would be litigated at trial, then evaluated where the relevant evidence for such litigation was located, as relevant to whether the ends of justice required a different forum. In that regard, the court found that defendants' primary defense at trial would be that plaintiffs implicitly consented to all of the transfers, which would require defendants to present evidence regarding the Doumith family's business interests and business practices, Nazim's historical role in the businesses, and Nazim's capacity as relevant to the transfers. We view such findings as "preliminary factual findings as to issues outside the pleadings" that were "necessary" to

_____

[5] Plaintiffs assert that the error was compounded because plaintiffs submitted evidence to support their allegations, and the trial court relied on defendants' evidence about their defense rather than plaintiffs' evidence supporting their allegations. Because we disagree with the premise of their argument—that the court could not make findings regarding what evidence would be relevant to defendants' theory of defense—we also disagree that their submission of evidence to support their view required the court to ignore defendants' defense and find that the transfers were unauthorized and improper.

assessing "the availability and location of potentially relevant evidence." *Id.* at 96.

We do not understand *Espinoza* to support the proposition that, in deciding a *forum non conveniens* motion, the trial court must disregard any evidence relevant to parties other than the plaintiff. Rather, we read it as allowing consideration of the nature and location of all evidence relevant to deciding the claims, including that relevant to the defense.

That is both implicit in *Espinoza*'s reasoning and explicitly referenced at various points in the opinion. Most notably, *Espinoza* states that "trial courts should consider not only the relative convenience of one forum compared to another, but the consequences that litigating in each forum might have on the plaintiff's access to effective redress, *and on both parties' ability to prosecute, or defend* the claims asserted." *Id*. at 106 (emphasis added); *see also id*. at 106-07 (describing the "first factor, and often the most important" as the relative ease of access to sources of proof, "including the time, expense and difficulty of obtaining the evidence that *the parties* will need to litigate the action" (emphasis added)). That echoes the favorably cited statement from *Van Cauwenberghe* that courts "'must scrutinize the substance of *the dispute between the parties* to evaluate what proof is required, and determine whether the pieces of evidence *cited by the parties* are critical, or even relevant, *to the plaintiff's cause of action and to any potential defenses to the action*.'" *Id*. at 97 (quoting *Van Cauwenberghe*, 486 US at 528 (emphases added)).

In this case, we agree with defendants that the trial court's approach to deciding their renewed motions was in line with the procedure discussed in *Espinoza*. The court scrutinized the substance of the parties' dispute to determine what evidence would be critical to each party, then considered the nature and location of that evidence as relevant to making its ultimate decision on what the ends of justice required. We are unpersuaded that the court erred in its approach to deciding the motions.[6]

_____

[6] In line with how plaintiffs framed their argument in the opening brief, we limit our discussion to how the trial court approached its task under *Espinoza*,

C.   *Whether the Trial Court Abused Its Discretion*

Finally, plaintiffs argue that the trial court abused its discretion when it ultimately dismissed their claims on *forum non conveniens* grounds—which, as articulated in *Espinoza*, 359 Or at 102, required a determination that "the relevant private- and public-interest considerations weigh so heavily in favor of litigating in [the] alternative forum that it would be contrary to the ends of justice to allow the action to proceed in the plaintiff's chosen forum."

Plaintiffs provide a long list of things that we understand them to view as incompatible with the trial court making that determination. Most of them are either contradicted by the trial court's findings or are general reiterations of the litigation's Oregon connections, which the trial court recognized and considered in making its determination. We therefore focus our discussion on two facts cited by plaintiffs that fall outside those categories: first, that Nazim "did not own or have authority" over David's accounts in Oregon or Elsie's Oregon bank account and, second, that defendants knew that Nazim "had been diagnosed with dementia and Lewy Body before the improper transfers were made."

As to Nazim's authority over the cited Oregon accounts, we understand plaintiffs to suggest that, because Nazim lacked express authority over those accounts, he could not have directed Azar or Daniel to move money out of them, such that evidence regarding whether he gave such directions or had capacity to do so is irrelevant. The difficulty with that argument is that Nazim's lack of express authority over the accounts does not, in and of itself, establish that he lacked actual authority to direct the movement of funds in those accounts. As the trial court found, defendants will seek to prove at trial that Elsie and David implicitly consented to Nazim and, by extension, Daniel, making decisions about the family business and treating the assets

_____

rather than delving into individual findings or the evidence to support them. To the extent that plaintiffs touch on the possibility of a sufficiency challenge in their reply brief, that argument comes both too late and without sufficient development for us to address it, so we have not considered it. *See Federal National Mortgage Association v. Goodrich*, 275 Or App 77, 86, 364 P3d 696 (2015) (regarding issues raised in reply briefs); *Vukanovich v. Kine*, 302 Or App 264, 287, 461 P3d 223, *rev den*, 366 Or 827 (2020) (regarding undeveloped arguments).

in accounts held in individual family members' names as family assets. In other words, defendants will seek to show that Elsie and David implicitly consented to the use of assets in the Oregon accounts for the benefit of the family business, rather than solely for their own benefit as the named account holders. Like the trial court, we take no view on whether that defense will prevail at trial. What matters is that litigating it will put the family's business practices and Nazim's capacity directly at issue, and the evidence on those issues is highly concentrated on Guadeloupe.

As for defendants knowing that Nazim had been diagnosed with dementia and Lewy Body in 2014, we understand plaintiffs to suggest that defendants will not be able to seriously dispute at trial that Nazim lacked the capacity to run the family business or direct bank transfers by the time the disputed Oregon transfers were made. However, as the trial court recognized, Nazim's 2014 diagnosis (which defendants acknowledge) does not preclude defendants from trying to prove that Nazim remained capable for a period of years after his diagnosis and continued making decisions, including delegation decisions, which the family continued to accept. Again, like the trial court, we have no opinion on the merits of those issues—what matters is that they will be litigated.

Ultimately, we are unpersuaded that the trial court abused its discretion in granting defendants' motions to dismiss. As recognized in *Espinoza*, the doctrine of *forum non conveniens* should be used sparingly, because plaintiffs are generally entitled to choose their own forum, even if it may not be the *most* convenient forum. 359 Or at 78, 102, 104 (recognizing that the doctrine should be applied in "rare cases" where "the balance is strongly in favor of the defendant," and that it "is not a doctrine that compels plaintiffs to choose the optimal forum for their claim" (internal quotation marks omitted)). When the doctrine is properly applied, the trial court's exercise of discretion is "guided by legal principles that provide a range of permissible options," and the court seeks to "strik[e] an appropriate balance between the court's obligation to decide cases properly before it and its authority to dismiss or stay certain actions in order to

protect the interests of fundamental fairness and effective judicial administration." *Id*. at 93. The court should dismiss on *forum non conveniens* grounds only if "the relevant private- and public-interest considerations weigh so heavily in favor of litigating in [the] alternative forum that it would be contrary to the ends of justice to allow the action to proceed in the plaintiff's chosen forum." *Id*. at 102.

Here, we understand the trial court to have been guided by the correct legal principles in ruling on defendant's motions, to have sought to strike an appropriate balance based on all of the relevant information, to have determined that the ends of justice did require trying the action in another forum, and to have ultimately made a decision that fell within the range of permissible options. Plaintiffs' disappointment in not being allowed to litigate these claims in their chosen forum is understandable, as may be their frustration with the court revisiting the *forum non conveniens* issue after having initially declined to dismiss on that ground. We are ultimately unpersuaded, however, that the trial court abused its discretion in ruling as it did. Accordingly, we affirm.

Affirmed.